WILLIAM R. SCRIBNER AND FREDERICK A. POTTER v. ALLEN P. COLLAR.

*Brokerage—Commissions from both sides.*

The same agent was retained by different persons on commission to negotiate sales or exchanges of their property, and he brought

about an exchange between two of them, neither knowing that he was acting for the other. *Held* contrary to public policy to allow him a right of action against both to recover his commissions, even though he had acted in good faith.

A man placed certain property in the hands of agents.for sale or exchange for farm property at his option, and agreed to render all the assistance he could in making such sale or exchange. *Held* that the contract conferred authority to negotiate, and did not constitute the agents mere middlemen to bring the parties together.

Case made from Superior Court of Grand Rapids. Submitted January 24. Decided January 31.

ASSUMPSIT. Plaintiffs recovered judgment.

*Champlin & More* for plaintiffs. Middlemen who simply bring together the parties to a trade and have no share in the negotiations can receive commissions from both (*Herman v. Martineau*, 1 Wis., 151; *Stewart v. Mather*, 32 Wis., 344); as in case of real estate brokers, *Mullen v. Keeztleb*, 7 Bush, 253.

*S. A. Kennedy* for defendant. One cannot at the same time be agent for vendor and purchaser, *Meyer v. Hanchett*, 39 Wis., 419; *People v. Township Board*, 11 Mich., 222; *Clute v. Barron*, 2 Mich., 192; *Dwight v. Blackmar*, id., 330; *Ames v. Port Huron Log Driving Co.*, 11 Mich., 139; *Bollman v. Loomis*, 41 Conn., 581: 15 Amer. L. Reg. [N. S.], 75, with note by Redfield.

GRAVES, J. The plaintiffs recovered judgment against defendant for certain commissions, and a review of the proceedings is asked upon a case made.

The defendant owned certain real estate he wished to sell or exchange, and he employed the plaintiffs to aid him. The arrangement was in' writing and signed by defendant in a book kept by plaintiffs for such entries. After designating the property and the price and setting down the amount to stand on mortgage and the time of credit and rate of interest, it proceeded as follows:

"I hereby place the above described property in the hands of Messrs. Scribner and Potter for sale, or exchange for farm property at my option, and agree to pay them a brokerage commission of 2½ per cent. when sale or exchange is made, and further agree to render all the assistance I can in making such sale or exchange."

At the same time this arrangement was made, the plaintiffs were under a similar retainer from persons by the name of Warren, who had a farm they wished to sell or exchange. Of this fact the defendant was ignorant.

In the course of a few weeks the plaintiffs facilitated the opening of negotiations between the Warrens and defendant, and the parties not long after, through the aid of plaintiffs, consummated a trade, the Warren property, however, being granted to Homer A. Collar, a son of defendant. There were some special circumstances connected with the substitution of the former for the latter as grantee which are somewhat obscure, to say the least, but the result is not governed by them. After this trade it was ascertained by the defendant that during the negotiation the plaintiffs were acting under retainer from the Warrens, and for an agreed compensation, and he objected in the court below and objects here that the fact is a complete answer to the action.

The plaintiffs' counsel have not contested and do not contest the principle that the same person cannot be the agent of both parties in reference to a matter where discretion is to be exercised upon interests which are conflicting. He contends that the plaintiffs were not in that situation, but on the contrary that the retainer taken by the plaintiffs required them to do no more than bring the parties together, and that in this the interests of defendant and the Warrens were concurrent and not conflicting; that these persons were left to negotiate as they pleased and uninfluenced by the plaintiffs; that no opportunity existed for any infringement of good faith, and that it was just and lawful to take employment and

pay from both sides. There is nothing in the record to impugn the personal fairness and integrity of purpose of the plaintiffs in this transaction, and the only question is whether the undisclosed arrangement to act for each side so accords with public policy as to afford a ground of action to recover pay for the service. There is some contrariety of decision in regard to the right to accept a double retainer and double pay, even when the fact is disclosed to both parties. *Farnsworth v. Hemmer,* 1 Allen, 494; *Walker v. Osgood,* 98 Mass., 348; *Pugsley v. Murray,* 4 E. D. Smith, 245; *Everhart v. Searle,* 71 Penn. St., 256; *Raisin v. Clark,* 41 Md., 158; *Schwartze v. Yearly,* 31 Md., 270; *Morison v. Thompson,* L. R., 9 Q. B., 480: 10 Eng., 129; *Rice v. Wood,* 113 Mass., 133; *Lynch v. Fallon,* 11 R. I., 311.

But the cases are nearly, if not quite, uniform that where the double employment exists and is not known, no recovery can be had against the party kept in ignorance, and the result is not made to turn upon the presence or absence of designed duplicity and fraud, but is a consequence of established policy.

The opinion has been expressed that where the person is employed merely as a middleman to bring persons together and has no duty in negotiation and has not engaged his skill, his knowledge or his influence, he may lawfully claim pay from both parties. *Rupp v. Sampson,* 16 Gray, 398; *Siegel v. Gould,* 7 Lans., 177. No doubt such cases may occur; but their exceptional character should appear clearly before they should be exempted from the general principle. In *Walker v. Osgood,* supra, the court explained *Rupp v. Sampson* and pointed out the distinction on which it proceeded. The plaintiff was employed merely to perform a preliminary act. His sole office was to bring two specified persons together. The plaintiff's counsel in this case has mistaken, as I think, the construction due to the writing on which the case is based. The employment was not merely that defendant and some third party should be brought together for

mutual negotiation with an option on defendant's part to do anything or nothing.

The writing placed the property for sale or exchange in plaintiffs' hands and then reserved an option as to whether the final disposition should be a sale or an exchange and expressly required defendant to afford the plaintiffs all the assistance he could in making such sale or exchange. The contract had large scope and went much further than to constitute the plaintiffs mere middlemen to bring some particular third person, or even any one in general, into a position to negotiate with the defendant. It conferred authority to negotiate and reposed trust and confidence and conemplated that the plaintiffs should act in defendant's interest and should exert their judgment and their influence in his behalf. Such was the contract entered into and there is no other to support a recovery, and the view most favorable to the plaintiffs is that the evidence of their claim did not depart from it. The proof of a case not consonant to the writing would of course be of no avail. No other relation than that caused by this agreement is involved in the ground work of the alleged cause of action, and no showing of a different relation can be urged by plaintiffs to sustain their case. Whether they interfered more or less or not at all with the negotiations could not change the relation caused by the contract or increase or diminish their duty under it. If their judgment and influence were due to defendant, if they owed him the full measure of their skill and favor to assist him to reach a result most advantageous for him, it might well be that omission to interfere and take an active part would be a failure of duty, and this failure moreover might be a consequence of the adverse retainer. The parties employed might not be conscious of any bias and still be induced to maintain an inactive or neutral position instead of the helping and positive position bargained for. There might be this or that degree or extent of dereliction as a consequence of the employment by the other side, and yet no actual moral lapse be involved.

It seems to me there is no escape here from the rule of policy before mentioned, and that the judge ought not to have submitted the case as he did upon the theory of plaintiffs' counsel. In view of the special circumstances disclosed by the record, a contrary result, were it admissible, would not be distasteful.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.