MARCUS P. HOBART v. CHARLES K. SHERBURNE.[1]

November 9, 1896.

Nos. 9798—(6).

Broker—Commission—Good Faith.

All agreements between a real-estate agent or broker and a proposed purchaser touching the subject-matter of his employment, which are not disclosed to his principal, should be scrutinized closely, and, if not found compatible with entire integrity and good faith toward the principal, they will defeat the agent's claim for commission from his principal. Evidence considered in the light of this rule, and *held*, that the verdict in this case is not sustained by the evidence.

Appeal by defendant from an order of the district court for Hennepin county, Belden, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $1,700. Reversed.

*Kitchel, Cohen & Shaw*, for appellant.

*L. R. Larson*, for respondent.

[1] Reported in 68 N. W. 841.

START, C. J.    This was an action to recover the reasonable value
of the plaintiff's services as a real-estate agent in procuring for the
defendant a lessee of certain premises in the city of Minneapolis,
owned by defendant.    The defense was (a) a general denial; (b) that
the services were performed for the lessee as his agent, and not for
or as the agent of the defendant; (c) that the services were rendered
pursuant to an agreement between the plaintiff and the lessee, Staf-
ford, whereby plaintiff was to procure from the defendant the lowest
price he could for the lease, and divide with the lessee whatever com-
mission he could obtain from the defendant.    The plaintiff had a ver-
dict, and the defendant appeals from an order denying his motion
for a new trial.

The defendant's assignments of error may be considered under two
general heads:    First. Did the trial court err in its instructions to
the jury?    Second. Did the court err in refusing the defendant's
request to instruct the jury to return a verdict for him, and in refus-
ing his motion for a new trial on the ground that the verdict is not
justified by the evidence?

1. The court instructed the jury in reference to the third defense,
in substance, as follows:    If at the outstart there was an agreement
or understanding between the plaintiff and Stafford that the former
should in any way, or to any extent, act for the latter, or for the par-
ties he represented, and that the commission should be divided be-
tween them, the plaintiff cannot recover in this case.

"But if, as I have already indicated to you, at the outstart, he
brought the fact to Stafford's attention that this property was for
lease,—that is, that he first directed Stafford's attention to that fact,—
and from that time on thereafter acted exclusively for the defendant
*   *   *   and if at some subsequent time he discovered that it might
be for the defendant's interest to make this concession of a part of his
commission, and he did it, and did it honestly and with an honest in-
tent for the purpose of promoting the interest of the defendant, then
that did not defeat his right to recover."

The defendant excepted to so much of the foregoing as we have
quoted literally.    As an abstract legal proposition, the instruction
was correct.    But in practice all agreements between a real-estate
agent or broker and the proposed purchaser, touching the subject-
matter of his employment, which are not disclosed to his principal,
should be scrutinized closely, and, if not found compatible with entire

integrity and good faith toward the principal, they will defeat the agent's claim for commission from his principal. Webb v. Paxton, 36 Minn. 532, 32 N. W. 749.

2. The defendant further insists that the evidence does not sustain the verdict, for the reason that it does not show that the plaintiff was the procuring cause of the making of the lease, that it does show that the damages are excessive, and that the plaintiff was the employé of Stafford, and that their relations were such that the plaintiff could not perform faithful services for the defendant.

The evidence on the part of the plaintiff was sufficient to sustain the finding of the jury that he was the procuring cause of the making of the lease. The question as to the damages becomes immaterial in view of the disposition which we make of the case. Under the instructions of the trial court, the jury, in returning a verdict for the plaintiff, necessarily found that his arrangement with and relations to Stafford in the premises were entered into with an honest intent, and for the purpose of promoting the interest of defendant. The verdict on this point is so manifestly and palpably without the support of any sufficient evidence that we are constrained to set it aside, notwithstanding our extreme reluctance to interfere with a verdict which has been approved by the trial court.

This conclusion is based upon the plaintiff's own testimony. He practically admitted that he had an arrangement with the agent of the lessee to divide his commission with him, and that he sustained equivocal relations to him as to the subject-matter of his alleged employment by the defendant. The burden was, therefore, on the plaintiff to establish his entire good faith in the premises, and that such arrangement and relations were compatible with faithful services for the defendant. He failed to do this. The defendant called as a witness Lac Stafford, the agent of the lessee, who gave testimony tending to show that he employed the plaintiff to look after his interests in the deal, and that they agreed to divide the commission. This the plaintiff positively denied, but his testimony as to his dealings with Stafford, stated in its logical order, and omitting repetitions, was substantially this:

"The commission part was this: Stafford said, 'I ought to have some commission, but it would not be using my parties right, because I am connected with them.' And he said, 'I will not ask any.' Q. Now,

Mr. Hobart, isn't it a fact that you and he agreed to divide up the commission at that time? A. He spoke about the commission, and he said: 'I am associated with the parties, and I won't take any commission. It wouldn't be using my parties right.' Stafford at one time later said that he ought to have some of the commission, and he wanted me to divide it, and I said, 'Very well, I will cut it in two.' Q. You say that this original conversation was in October? Can't you state any other times when you had the same conversation with him? A. Well, when he would come in there, and he would ask about the deal, and ask if we couldn't get Sherburne down, and this thing and that thing, and I would incidentally talk about the commission. Q. He asked you if you couldn't get Sherburne down? A. Yes. Q. Down on what? A. I didn't see Sherburne after that. Q. Exactly. But down on what, Mr. Hobart? A. Down on the price. Q. Now, what was the original price that Sherburne fixed there? A. I think he had fixed $1,250. He did come down a little, and he went up finally. Q. You couldn't get him down? A. Well, I didn't seem to get him down to Stafford's first proposition, and Stafford came up to his. Q. You tried to get him down? A. I tried to get them together. Q. Did you try to get Sherburne down on his price? A. I might have. Q. Well, you know, don't you? A. Well, I might. Q. Don't you know whether you did or not? A. No, I do not know as I do. I put them together, and they did all the talking themselves. Q. How much of this commission did you expect to get for the work in getting Sherburne down on his price? A. I didn't get him down on his price. As near as I can recollect, when he would come up and want an appointment with Sherburne, he would say: 'You have a talk with him and see if you can't get him down on value.' And I says, 'I can't get him down any.' As a matter of fact he went up. Q. I am speaking about Mr. Sherburne; in the conversations you had with Sherburne, where you said you might have tried to get him down in price. I want to know if you can explain that in any way. Did you ever have any conversations with Sherburne to try to do that? A. That conversation would be this: He would come in, after they would meet, and tell me how near they were together. Q. Sherburne would? A. Yes, sir. And he would state what Stafford proposed to do now, 'and here is what I think I ought to have.' And I said, 'Possibly that would be advisable for you to accept.' Q. You mean what Stafford offered? A. Yes, what Stafford would offer him. Q. Did you ever endeavor to get him to take less than that price? A. No. Q. Did Stafford ever request you to use your influence with Sherburne to get him to take less? A. No."

The plaintiff also admitted that, pending negotiations for the lease between the defendant and Stafford, he wrote and sent a letter to the latter in these words:

"Mr. Lac Stafford—Dear Sir: Mr. Sherburne has been in, and said he had made you another prop., and in writing I charged him that my

commission would be $2,000. I must have one thousand dollars net to me. Yours, very truly, M. P. Hobart."

His testimony explaining this letter is as follows:

"Q. Why did you write Mr. Stafford that letter, if you were looking to Mr. Sherburne for your money, telling him about the amount of your commission, if you were looking to Sherburne? Will you explain that to the jury, Mr. Hobart? A. Yes, sir; I will. Q. Well, tell us about that. A. I was simply waiving a thousand dollars of the commission. Q. Why did you write to Lac Stafford if you had nothing to do with him about the commission? Explain that to the jury if you can. A. There is nothing to explain. Q. Is that your answer to my question, Mr. Hobart? A. Yes, Q. Is that the only explanation you have for writing to Lac Stafford, and telling him that your commission would be $1,000? A. I told him that the lowest I could take would be a thousand dollars. Q. Have you no explanation to make to this jury about writing to Lac Stafford, telling him how much your commission was? A. You can take it either way. If I was going to divide the commission, I was getting $1,000. Q. You had agreed to divide that commission at that time with him? A. No, sir; I hadn't agreed to that. Q. Why were you writing to him, then? A. I was to get $1,000. Q. From whom? A. From Sherburne. Q. Was Lac Stafford to get it for you? A. Lac Stafford was to pay the whole; so Sherburne had put it in writing. Q. To whom? A. To pay all the commission. He says that he put it in writing so that the whole commission devolves upon 'me' to pay. Q. And that is the reason you wrote to Lac Stafford? A. Yes, sir. Q. You didn't tell Mr. Sherburne that your commission was $1,000? A. No, sir. Q. You didn't tell him about your arrangement with Lac Stafford? A. No, sir. Q. Mr. Sherburne didn't know you had an agreement of any kind with Lac Stafford, did he, so far as you know? A. No, I didn't tell him anything about it. Q. When was the interview between you and Lac Stafford when he asked you to get Sherburne to reduce the price as much as you could? A. There was no such conversation. Q. You didn't so testify yesterday? A. No, sir; I didn't in those words."

It is unnecessary to call to our aid any adjectives to properly characterize this evidence, for it speaks for itself. It shows that the plaintiff failed to meet the burden placed upon him by his admitted arrangement with the agent of the lessee, and to fully and fairly explain his arrangement and relations with such agent, and show affirmatively that they were entirely compatible with his duty to the defendant. This case is to be distinguished from one where a real-estate agent or broker is employed simply to bring the parties together, and has no discretion as to the price and terms of the sale, and takes no part in such negotiations. In the latter case it has

been held that it is no violation of duty for the broker to stipulate for a commission from both parties or to divide his commission with the purchaser. The plaintiff, however, in this case did not maintain a neutral position as to the price and terms of the sale, for he substantially admits that at the request of the lessee's agent he tried to induce his principal to reduce his price, while concealing from him his true relations to the agent of the lessee.

Order reversed, and a new trial granted.