### McLURE v. LUKE.

#### (Circuit Court of Appeals, Ninth Circuit. June 3, 1907.)

#### No. 1,415.

**1.** Brokers—Actions for Compensation—Evidence of Performance of Contract.

Defendant entered into a written contract with plaintiff's intestate by which he agreed, in case he should purchase certain mining property at a stated price with the assistance of plaintiff's intestate, to pay the latter a commission. Three days after the death of the decedent a contract was executed by which defendant purchased the property with other property for slightly more than the price named. A witness also testified that on the day before the decedent's death defendant told him of the contemplated purchase, and asked him to ascertain if the decedent would not accept a sum in cash in lieu of an interest in the property which he was to receive under the commission contract. *Held*, that the contract of sale and such testimony were sufficient, prima facie, to establish that the decedent had performed the service that entitled him to the commission.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 116, 117.]

**2.** Same—Right to Compensation—Acting for Both Parties.

Where a broker, although acting as agent for both the seller and purchaser of property, is given no discretionary power to negotiate the sale, but his employment is merely to bring the principals together and to keep them informed as to the condition of the property, the dual employment is not inconsistent nor contrary to public policy, and he may receive payment from both principals.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 52.]

Ross, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Montana.

John B. Clayberg, Thos. C. Bach, and Ira T. Wight, for plaintiff in error.

E. C. Day, M. S. Wilson, and Charles H. Lovell, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

DE HAVEN, District Judge. This is an action at law brought by the plaintiff, as administrator of the estate of Charles S. Gibson, deceased, against L. S. McLure and Charles D. McLure, defendants. The complaint, in addition to other facts necessary to state a cause of action, sets forth that defendants agreed to pay to said Gibson, in the event of the purchase by them, for the sum of $50,000, of the

Broadwater group of mines in the county of Cascade, state of Montana, a commission of $3,000, and $2/100$ interest in the property purchased, in return for his assistance in making such purchase, payment to be made at the time of the delivery of the deed of the property; that the property was purchased by the defendants for the price named, and the contract was fully performed upon the part of Gibson; that $2/100$ of the property purchased is of the value of $2,000, and judgment is demanded for the sum of $5,000. The evidence disclosed that the defendant Charles D. McLure was not a party to the contract referred to in the complaint, and the action was dismissed as to him. At the close of plaintiff's testimony, the remaining defendant, L. S. McLure, requested the court to instruct the jury to return a verdict for him. This request was refused, and, the defendant declining to introduce any evidence, the court instructed the jury to find for the plaintiff for the full amount sued for. The case is brought here by the defendant L. S. McLure on writ of error. There are various errors assigned, only one of which requires discussion, and that is the one which relates to the action of the court in instructing the jury to return a verdict in favor of the plaintiff.

1. In the consideration of the question presented for decision, it is necessary briefly to refer to the evidence, and to the issues made by the pleadings. The evidence shows that the defendant entered into the following contract with the deceased Gibson, in behalf of whose estate this action was brought:

"Neihart, Dec. 1, 1899.

"Should I purchase the Broadwater group of mines and other property for the sum of fifty thousand dollars (and Charles S. Gibson assisting me in the making of said purchase) then in that event I agree to pay to the said Charles S. Gibson in return for above assistance a commission of three thousand dollars at the time of delivery of deed of above property to me.

"I also agree to give him two one-hundredths ($2/100$) interest in the property in lieu thereof in the event of the incorporation of a company by me on the said property, to give him $2/100$ two one-hundredths—of the capital stock of said company at the time of its incorporation in lieu of the said two one-hundredths interest in the property. Said stock to be non-assessable stock.

"The above agreement to be void if I do not purchase the property at the price above stated.                    L. S. McLure."

This agreement was set out in hæc verba in the defendant's answer, as the contract between himself and Gibson, and it was not alleged that it was intended by the parties thereto to include in such contract other property than the Broadwater group of mines; nor was it suggested at the trial that there was in the minds of the parties to the agreement any other property than that therein specifically mentioned, to wit, the Broadwater group of mines. This being so, the words "and other property," in the clause of the agreement describing the property to be purchased as "the Broadwater group of mines and other property," are to be regarded as surplusage, and the agreement construed as only applying to the Broadwater group of mines. Was the evidence sufficient to show that the contract as thus construed was performed by Gibson?

We agree with the contention of the defendant that under the pleadings it was incumbent upon the plaintiff to prove, first, that the prop-

erty mentioned in this contract was purchased by the defendant for the price named therein—$50,000; and, second, that Gibson assisted him in making the purchase. For the purpose of showing these facts, the plaintiff introduced in evidence a written contract entered into between the owner of the Broadwater group of mines and the defendant L. S. McLure and Charles D. McLure, on April 17, 1900, by the terms of which the vendor was to sell and the defendants purchase the Broadwater group of mines; also all ores on the dumps, all tools, machinery, and implements of every kind and nature, used in and about said mines, for the sum of $50,600. The contract further provided that, "in addition to the Broadwater group above mentioned, and as part of the property hereby agreed to be conveyed," the vendor "agrees to sell and convey by quitclaim deed all his right, title and interest in and to the tunnel site on the Enterprise No. 2, claim, * * * and also all and singular the certain quartz lode claim, known and described as the Key." The evidence shows that Gibson died on the 14th of April, 1900, three days before the execution of the agreement just referred to, and one witness testified that on the day before his death the defendant informed him of the contemplated purchase of the Broadwater group of mines, and of the contract which he had made with Gibson, and requested him to see the latter and ascertain if he would accept $3,000 cash in lieu of stock in the company that was to be formed. The proposition was not made to Gibson, as he died before the witness had an opportunity to see him. This is all of the evidence tending to show performance of the contract sued on, on the part of Gibson, and was, we think, sufficient for that purpose in the absence of evidence to the contrary, and there is no such evidence. The proposition which the defendant authorized the witness referred to, to make to Gibson, was in substance one for a modification of the contract under which he was employed, and the offer so made shows that the defendant then recognized the right of Gibson to the commission stipulated for in his contract, and was in effect an implied admission by him that he had performed the service entitling him to the compensation provided for in that contract, and was therefore some evidence of that fact against the defendant making the admission. The agreement of April 17, 1900, by which the Broadwater group of mines and the other property therein described was purchased for $50,600, is not of itself sufficient to prove that the price paid for the Broadwater group of mines exceeded $50,-000, as other property was included in that agreement. In the absence of evidence to the effect that the other property therein described was purchased for less than $600, this agreement did not tend in any degree to weaken the force of the defendant's implied admission that the contract by which Gibson was employed had been fully performed by him.

It is argued, however, by counsel for the defendant, that the proposition to pay money in lieu of certificates of stock may have been intended to settle or compromise a disputed claim; but there is nothing in the evidence upon which to base such a supposition, as it contains no intimation that there was any dispute between defendant and Gib-

son as to the right of the latter to receive the compensation provided for in the contract sued on.

2. It is further contended by defendant, and this seems to be his main contention, that the court erred in directing a verdict for the plaintiff, because it appears from the pleadings that the deceased Gibson was acting for both the vendor and vendee in the matter of the sale of the Broadwater group of mines, and there was no evidence showing that the parties to that transaction knew that he was acting in such dual capacity. The principle for which the defendant contends is that it is prima facie contrary to public policy for a broker to act as agent for both vendor and vendee in a sale of property, and that, when such double employment is shown, the agent is not entitled to recover compensation from either of his principals, without proof that both of them knew of the dual capacity in which he acted, and consented thereto. This may be regarded as the statement of an elementary rule of law, and is supported by numerous authorities, among which the following may be cited: Meyer v. Hanchett, 43 Wis. 246; Scribner v. Collar, 40 Mich. 375, 29 Am. Rep. 541; Leathers v. Canfield, 45 L. R. A. 33, 117 Mich. 277, 75 N. W. 612; Hobart v. Sherburne, 66 Minn. 171, 68 N. W. 841; Young v. Trainor, 42 N. E. 139, 158 Ill. 428; Hannan v. Prentis, 124 Mich. 417, 83 N. W. 102; 19 Cyc. p. 279. It will be found upon examination that this principle of law is only applied in cases where the agent is clothed with some discretion in the matter of advising or negotiating the sale or purchase of property, where the duty which he owes to one principal is inconsistent with that which he owes to the other. The rule is based upon the doctrine that "the duty of an agent for a vendor is to sell the property at the highest price; and of the agent of the purchaser, to buy it for the lowest." Farnsworth v. Hemmer, 1 Allen (Mass.) 494, 79 Am. Dec. 756. When the fact of such inconsistent relation is either admitted or proved, the burden is then upon the agent to show that both principals had knowledge and consented to his acting in such dual capacity, and without such proof he is not entitled to recover compensation from either; but where the agency is not of this nature, where the agent is given no discretionary power to negotiate the sale, and his employment is merely to bring the principals together that they may make their own contract upon such terms as they may agree, the reason for the rule above stated ceases, and the agent is entitled to recover from both principals, if both have agreed to pay him for such services. Rupp v. Sampson, 16 Gray (Mass.) 401, 77 Am. Dec. 416; Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867; Empire State Ins. Co. v. American Cen. Ins. Co., 34 N. E. 201, 138 N. Y. 446.

The question then is, to which of these classes does the present case belong? There is nothing in the evidence to throw any light upon this question, as it does not disclose the scope of Gibson's agency, what assistance he was to render the defendant in making the purchase of the Broadwater group of mines, or what service he was to perform for the owner of the property sold. It is, however, admitted by the pleadings, that Gibson was to receive compensation from both parties to that transaction, and defendant claims that, such fact being admitted, the burden

of proof was upon the plaintiff to prove that both parties knew of and consented to such double employment. It is alleged in the answer, as one defense to the action, that Gibson was to receive compensation from the owner of the Broadwater group of mines, as well as from the defendant, for his services as broker in the matter of effecting a sale thereof, and that neither of his principals knew that Gibson was acting in such dual capacity. The plaintiff in his replication admits that Gibson was to receive compensation from both the defendant and the owner of the Broadwater group of mines, in the event that the defendant should become the purchaser thereof, but in this connection alleges:

"That in the effecting of the said sale the said Charles S. Gibson merely acted as agent in bringing the said parties together and in keeping them informed as to the condition of the property, and that he had nothing whatever to do with the fixing of the price for which the property was to be sold, or in determining as to whether or not either of the parties would accept the proposition so made by the other."

It will be seen from this that the replication in effect denies that Gibson's agency was one which gave him any discretion in the matter of negotiating a sale of the Broadwater group of mines, or imposed upon him any other duty in relation to such sale than that of a middleman, and keeping the parties "informed as to the condition of the property." The admission of the double agency being thus qualified, we think the burden was upon the defendant, under the authorities, to offer some proof to sustain the broad allegation of his answer in relation to the scope of Gibson's agency. In the absence of evidence tending to show that Gibson's agency was one which vested him with some discretion in the matter of negotiating the sale of the Broadwater group of mines plaintiff's replication is to be taken as true, and the case is thus brought within the rule of Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867, in which case it was said:

"It is undeniable that where the broker or agent is invested with the least discretion, or where the party had the right to rely on the broker for the benefit of his skill or judgment in any such case, an employment of the broker by the other side in a similar capacity, or in one where, by possibility, his duty and his interests might clash, would avoid all his right to compensation. The whole matter depends upon the character of his employment. If A. is employed by B. to find him a purchaser for his house upon terms and conditions to be determined by B. when he meets the purchaser, I can see nothing improper or inconsistent with any duty he owes B. for A. to accept an employment from C. to find one who will sell his house to C. upon terms which they may agree upon when they meet; and there is no violation of duty, in such case, in agreeing for commissions from each party upon a bargain being struck, or in failing to notify each party of his employment by the other."

The fact admitted by the replication, that, in addition to his employment as a middleman, Gibson was also employed by the parties to give information as to the condition of the property, does not affect the question before us, as it cannot be said as matter of law that such an employment imposed upon Gibson any inconsistent duty in the matter of the conflicting interests of the vendor and vendee. There certainly is no presumption that Gibson was employed by either of his principals to deceive the other, to suppress facts within his knowl-

edge, or to give false information to the other as to the condition of the mines. The replication avers that he was to keep them informed as to the condition of the property, and this must be construed as an allegation that his contract with both was to furnish true information as to its condition, and the double employment for such purpose, was not contrary to public policy, as the duty which he owed to one under such contract, was not inconsistent with his duty to the other.

The judgment is affirmed.

ROSS, Circuit Judge (dissenting). I am unable to agree to the judgment in this case. As stated in the opinion, there is nothing in the evidence to disclose the scope of Gibson's agency. In the answer to the complaint the defendant set up:

"That Gibson was to receive compensation from the owner of the Broadwater group of mines, as well as from the defendant, for his services as broker in the matter of effecting a sale thereof, and that neither of his principals knew that Gibson was acting in such dual capacity."

The answer does not allege that Gibson's agency was one which gave him any discretion in the matter of negotiating a sale of the mines, or anything about the scope of that agency. The answer, therefore, contained nothing calling for or admitting of any denial in the replication of the scope of the agency; so that the statement in the replication, "that in the effecting of the said sale the said Charles S. Gibson merely acted as agent in bringing the said parties together, and in keeping them informed as to the condition of the property, and that he had nothing whatever to do with the fixing of the price for which the property was to be sold, or in determining as to whether or not either of the parties would accept the proposition so made by the other," cannot be properly regarded as a denial of anything contained in the answer, but only as an affirmative allegation on the part of the plaintiff, and one to be proved by the plaintiff. In the opinion of the court it is said:

"The admission of the double agency being thus qualified, we think the burden was upon the defendant, under the authorities, to offer some proof to sustain the broad allegation of his answer in relation to the scope of Gibson's agency."

But the answer does not contain any allegation at all in relation to the scope of Gibson's agency. The effect of the decision, therefore, it seems to me, is that an agent may act for a vendor in the sale of his property, his duty to the vendor being to sell it at the highest price, and at the same time, without knowledge of either of the principals, act as agent for the purchaser, his duty to him being to buy at the lowest price. Yet the law is, as I understand it, and as is stated in the opinion, that this cannot be permitted.