HJALMER RASMUSSEN, Appellant, v. H. P. HANSEN, Appellee.

**BROKERS:** Compensation—Double Employment—Burden of Proof—
1 **Evidence.** The right of a broker to compensation is *prima facie* destroyed by proof on the part of defendant that the broker was guilty of accepting a double employment; that is, was acting as agent for both vendor and vendee in the transaction on which the broker is basing his right to commission. Evidence reviewed, and held to show that defendant had not met the burden of proof to show double employment (or at least that whether such double employment existed was a question for the jury).

**BROKERS:** Compensation—Double Employment—Evidence. Evi-
2 dence that *after* a sale had been agreed on and made binding at a certain price, the vendees voluntarily agreed among themselves to compensate the broker for the vendor for driving them around the country, and that such agreement was later communicated to the broker, who remarked, "All right, boys," but never asked the vendees for anything and refused their later offer of payment, is not sufficient to show a double employment, at least not as a matter of law.

*Appeal from Audubon District Court.*—J. B. ROCKAFELLOW, Judge.

MONDAY, APRIL 10, 1916.

ACTION to recover commission as agent in procuring a purchaser for certain real estate. Opinion states the facts. Directed verdict for the defendant in the court below. Judgment upon the verdict. Plaintiff appeals.—*Reversed.*

*Mantz & White,* for appellant.

*T. M. Rasmussen,* for appellee.

GAYNOR, J.—This is an action by an agent to recover commission of his principal for effecting a sale of real estate. The claim of the plaintiff is that, on the 1st day of October, 1914, defendant listed with him for sale certain real estate owned by the defendant; that at the time of the listing the defendant fixed the price at which plaintiff was authorized to sell at $115 per acre; that thereupon plaintiff took parties to view the premises, and on the 12th day of October found a purchaser in the person of one Hans Gregersen; that, through plaintiff's efforts, Gregersen purchased the real estate from the plaintiff, and a contract of sale was entered into between the defendant and said Gregersen; that there were 121 acres of land involved in the deal, and, under an agreement with the defendant, plaintiff was to receive a dollar an acre for bringing about the sale. The answer of the defendant admits that he employed the plaintiff, and that the sale was effected as alleged, but charges the fact to be that there was double employment; that plaintiff was, at the time, in the employ of the purchaser, and was employed to negotiate a purchase; that the purchaser agreed with the plaintiff, at the time of negotiating the sale and purchase, to pay plaintiff 25 cents an acre, or $30.25, provided plaintiff would procure the defendant's consent to the sale of the land to him at $112 per acre; that, in pursuance of such employment, the plaintiff telephoned the defendant that $112 was the best offer that he could get, and advised the sale at that price; that, relying upon the statements and representations of the plaintiff, and without any knowledge on his part that the plaintiff was employed by the purchaser, he agreed to sell and did sell the land to the purchaser at $112 an acre; that he had no knowledge or intimation that the plaintiff was acting in this double capacity, and denies plaintiff's right to recover. The issues thus tendered were tried to a jury. At the conclusion of all the evidence, plaintiff moved for a directed verdict. This was overruled. The court on its own motion directed a verdict

1. BROKERS: compensation: double employment: burden of proof: evidence.

for the defendant. Judgment being entered on the verdict, plaintiff appeals.

The court, in directing a verdict, said:

"It appears without controversy, and the undisputed evidence shows, that the plaintiff, before the completion of the transaction herein, was employed by the purchaser of the real estate in controversy, and, by such employment, was to receive 25 cents an acre from the purchasers, without the knowledge of the defendant."

This appeal presents but one question: Does the evidence show without dispute that the plaintiff was acting, at the time of the sale, as agent for both parties, without the knowledge of the defendant?

It does not involve any question of actual fraud, nor is it necessary that an actual fraudulent purpose should have existed in the mind of the plaintiff at the time. Nor is it material whether the defendant was defrauded in fact by what happened. If it be true that plaintiff was employed by the defendant to make a sale of defendant's land, and while so employed he agreed with the purchasers to receive a commission from them to effectuate the purchase in his interest, he cannot recover, although no fraud in fact was perpetrated on either. The law is that one who assumes to act as agent for both the vendor and vendee in the sale of property cannot recover from either when such double employment is shown, without proof that both of them knew of the dual capacity in which he acted, and consented thereto. This is elementary.

If one assumes to act as agent for the seller of property, it is his duty to consider only the interest of his employer; to sell the property intrusted to him for sale at the highest and best price, and upon the best terms obtainable. This is a part of his employment. This is the duty that he assumes under his employment. This is what he is paid for. If he assumes to act for the purchaser, good faith and his duty require him to use his best efforts and talents in the interest of the buyer for whom he acts, and, to this end, it is his duty to obtain the

property from the seller at the least figure at which he can, in good faith and good conscience, obtain it from the seller, and on the best terms. This is the duty that he owes to the purchaser, when he assumes to act as his agent. It is evident, therefore, that he cannot act in the dual capacity of agent for both and discharge to each the duty which the law imposed upon him.

In the case at bar, it is practically conceded by the defendant that he employed the plaintiff to procure a purchaser for the land in controversy; that he fixed his price at $115 an acre; that, in pursuance of such employment, the plaintiff took Jepson and Gregersen to look at this land; that, after they had examined it, they proposed to the plaintiff to purchase it at $110 an acre; that, after such proposition was made, plaintiff communicated with the defendant over the telephone and informed him of the offer; that the defendant repudiated this offer; that the plaintiff communicated that fact to his buyers; that the buyers, Jepson and Gregersen, then offered $112 an acre; that plaintiff again communicated with the defendant over the telephone and informed him that the purchasers had offered $112 an acre, and asked defendant what he wanted to do; that the defendant said he would sell it at $112, and directed the plaintiff to secure a payment on the deal so that it would bind the bargain. As to this last proposition, that the defendant accepted, without any question, the $112, or fixed the purchase price at that amount definitely, there is some controversy in the evidence. Defendant says that he told the plaintiff that he could sell it for $112.50 or $113, but he is not certain; but there is positive evidence that he said $112, and we must assume that to be the fact, in view of the action of the court in directing a verdict for the defendant. Plaintiff thereupon closed the deal with these purchasers and received from them a check for $10 to bind the bargain. Subsequently, these purchasers, in pursuance of such arrangement, met with the defendant, and the deal was consummated at $112 an acre, to the satisfaction of the defendant.

Plaintiff denies positively that the purchasers ever talked with him or requested him to act in their behalf, or that he ever told the defendant that that was the best offer he could get, or that he advised the defendant to take it. He says that they made that offer on their own motion, and simply asked him to submit it to the defendant; that he did submit it to the defendant and the defendant accepted it, and denies that he ever acted for these purchasers in any way in negotiating the sale. The best that can be said for the evidence that tends to support defendant's contention is that, after the proposition of $110 an acre had been made and turned down, these purchasers offered $112 an acre; that plaintiff communicated this fact to the defendant; that the defendant accepted it, and that the deal was closed at $112 an acre; that, thereafter, these purchasers proposed to pay plaintiff 25 cents an acre for his trouble in hauling them over the roads; that he said, "All right, boys;" but that nothing was accepted by, and nothing was ever received by, the plaintiff from these purchasers.

Defendant entered into a binding contract with these purchasers for the sale of the land. It is undisputed that the defendant agreed to pay plaintiff one dollar an acre, and there were 121 acres in the piece of land; so, under this record, the plaintiff would be entitled to recover unless the defendant sustained his contention that the plaintiff was acting, at the time, in a dual capacity. The defendant asserts, in order to defeat plaintiff's claim, that the purchasers agreed with the plaintiff, at the time of negotiating the sale and purchase, to pay plaintiff 25 cents an acre, or $30.25, provided plaintiff would procure the defendant's consent to the sale of the land at $112 an acre; that plaintiff, in pursuance of such employment by the purchasers, telephoned the defendant that $112 was the best offer that he could get, and advised the sale; that the defendant, relying on the plaintiff, made the sale without knowledge of this fact.

It is elementary that, if the plaintiff entered into such an agreement with the purchasers after his employment to act

for the defendant, and, in pursuance of such, did act for the purchasers in getting the purchase price reduced to $112 an acre, he cannot recover in this action. See *Casady v. Carraher,* 119 Iowa 500; *Redmond Bros. v. Henke,* 137 Iowa 228; *Scribner v. Collar,* 40 Mich. 375 (29 Am. Rep. 541); *Stapp and Hendrick v. Godfrey,* 158 Iowa 376.

It must be borne in mind, in determining this case, that the plaintiff is entitled to have the case go to the jury, unless the evidence submitted was of such a character that reasonable minds, searching for the truth, could have reached no other conclusion than that upon which the court acted in directing a verdict for the defendant. The burden is on the defendant to prove this affirmative defense, and, to make it available, it must be established by a preponderance of the evidence. To justify a court in directing a verdict for the defendant, the evidence must be of such a character that it left no reasonable question, in the minds of any honest person searching for the truth, that the plaintiff, during the negotiation, had, as alleged by the defendant, become the agent of the purchaser for a consideration, and agreed to act for the purchaser in the purchase of the land.

This calls upon us to make a careful examination of the record as actually made by the parties, and as it stood at the time that the court directed a verdict.

The probative force of the testimony, where there is positive testimony on one point or the other, is for the jury, and not for the court. The credibility of the witnesses is for the jury, and not for the court. The record discloses, without question, that plaintiff was employed by the defendant to negotiate the sale for him to these parties; that, with the knowledge and consent of the defendant, he was to take these parties to view the farm; that he did take them, and they did view the farm; that they proposed to purchase for $110 an acre; that the plaintiff communicated this fact to the defendant; that the defendant turned down the offer. The evidence tends to show that the purchasers then proposed to buy it at

$112 an acre; that the plaintiff communicated this fact to
the defendant; that, up to that time, nothing was said by
these purchasers to the plaintiff to induce plaintiff to act for
them, or in their interest; that, when the plaintiff by telephone
notified the defendant of this offer of $112 an acre, the
defendant accepted this offer, and directed plaintiff to take
a consideration to bind the bargain at that price; that he did
take a check from the purchasers to bind the bargain, and
so notified the defendant; that the defendant consummated
the deal with the purchasers as made with the plaintiff.

The only evidence tending to show that the plaintiff acted
for these purchasers consists of evidence to the effect that,
while the plaintiff was telephoning the last time, notifying
defendant of the offer of the purchasers to
2. BROKERS: com-    pay $112 an acre, these purchasers talked
pensation: dou-
ble employ-         between themselves, and not in the presence
ment: evidence.     of the plaintiff, that, if they succeeded in
getting the land at $112 an acre, they would pay the plaintiff
25 cents an acre, as they say, for his trouble in hauling them
over the muddy roads, not only to this place, but to other
places which they had visited with him while seeking to pur-
chase a farm; that this talk was not communicated to him
until after the sale had been accepted by the defendant on the
terms proposed; that they simply said that they would pay
him so much for his trouble in drawing them over the roads;
that he said, ''All right, boys!'' that they never did pay him
anything; that he never asked them to pay anything; that
they subsequently offered to pay, and he refused.

It cannot be said from this record that it was shown
beyond question that this plaintiff was acting as the agent
of these purchasers, or in their interest, at any time during
the negotiations. The part of defendant's answer in which
he sets up this defense reads:

''That at all times in the negotiation for the purchase
and sale of said land, plaintiff was the agent and was in the
employment of the purchasers, to wit, Gregersen and Jepson,

and was by them employed to negotiate the purchase thereof, and that this fact was unknown to the defendant; that the plaintiff and the purchasers entered into an oral agreement by the terms of which the said purchasers employed the plaintiff, and agreed to pay him the sum of 25 cents per acre on said land, or $30.25, providing said plaintiff would procure the defendant's consent to the sale of said land to them at $112 an acre; that, thereupon, the plaintiff, in pursuance of said employment, communicated with the defendant by telephone and advised the defendant that $112 an acre was the best offer he could get for said land, and advised the sale of the same at that price.''

An agreement implies a mutual meeting of the minds upon a proposition, and, therefore, to sustain this contention, the burden was on the defendant to affirmatively show that there was an oral agreement substantially as claimed.  The best that the defendant was able to do, or did do, was to show that these purchasers had talked between themselves, without communicating the fact to the plaintiff, that, in the event that they secured the premises for $112, they would give him 25 cents an acre for his trouble in hauling them around; that this talk was never communicated to the plaintiff until after he had made the proposition to the defendant of $112 an acre, nor until after that proposition had been accepted by the defendant and communicated to the purchasers, and then it does not affirmatively appear that plaintiff assented to anything of the sort, or agreed or consented to act for them in the sale of the land, or to try in their interest, in any way, to induce the defendant to sell the land to them at $112 an acre. There is a clear dispute in the evidence as to whether or not he told them that that was the best that he could obtain. The evidence tends to show that they made the proposition to him of $112 an acre, without limitation or suggestion to him to use his efforts in their interest to procure it at that figure; that he communicated that proposition to the defendant; that

the defendant accepted it; that all that was said touching payment to the plaintiff was after the proposition had been accepted by the defendant, and after the acceptance had been communicated to the purchasers.

It cannot be said that the undisputed evidence shows, or that the defendant has established by a preponderance of the evidence, that this plaintiff entered into any contract with the purchasers to serve them, in any way, in procuring the land for them. The rule that the defendant invokes is that it is *prima facie* contrary to public policy for a broker to act as agent for both vendor and purchaser in the sale of property; and that, when such double employment is shown, the agent is not entitled to recover compensation from either of his principals, without proof that both of them knew of the dual capacity in which he acted, and consented thereto. See authorities hereinbefore cited. See, also, *Meyer v. Hanchett,* 43 Wis. 246; *Scribner v. Collar,* 40 Mich. 375 (29 Am. Rep. 541); *Leathers v. Canfield,* 117 Mich. 277 (45 L. R. A. 33); *Hobart v. Sherburne,* 66 Minn. 171 (68 N. W. 841); *Young v. Trainor,* 158 Ill. 428 (42 N. E. 139); *Hannan v. Prentis,* 124 Mich. 417 (83 N. W. 102).

The burden was on the defendant to show this double employment. The burden then would be on the plaintiff to show that both parties knew and consented to it. We think that the defendant has not carried his burden to a successful issue. At least, there was a question for the jury, under this record, touching the fact relied upon to defeat plaintiff in his recovery.

For this reason, the case must be and it is—*Reversed.*

Evans, C. J., Ladd and Salinger, JJ., concur.