# C. L. DOWELL v. DAVID ROSENSTEIN.[1]

## April 23, 1926.

## No. 25,194.

**When broker has earned his commission.**

1. A broker, employed to procure a purchaser of real property, earns his commission when he produces to his employer a person, able, ready and willing to buy the property on terms acceptable to the employer.

**Verdict for plaintiff sustained.**

2. The evidence warranted the jury in finding that plaintiff had procured such a purchaser and that defendant was liable for the commission agreed upon.

**Bad faith of plaintiff not shown.**

3. The evidence failed to show that plaintiff had been guilty of bad faith in promising to donate part of his commission to make up the sum which defendant demanded upon an exchange of his property for that of the purchaser thereof.

Brokers, 9 C. J. p. 596 n. 33; p. 654 n. 40; p. 655 n. 43.

See note in 44 L. R. A. 593.
See note in 1 A. L. R. 528.   4 R. C. L. 307; 1 R. C. L. Supp. 1113;
4 R. C. L. Supp. 262.

Action in the municipal court of Minneapolis to recover a broker's commission. The case was tried before Fosseen, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Simon Meyers,* for appellant.

*Grimes & Maxwell,* for respondent.

[1]Reported in 208 N. W. 651.

LEES, C.

Plaintiff, a real estate broker, recovered a verdict for a commission, and defendant appealed from an order denying his motion in the alternative for judgment or a new trial.

Defendant owned a house and several lots at Lake Minnetonka. He employed plaintiff to procure a purchaser thereof and agreed to pay him a commission if he succeeded.

Plaintiff showed the property to James F. Crichton, who owned an apartment house on University avenue in Minneapolis, mortgaged for $6,500, and who entered into negotiations with defendant for an exchange of his property for defendant's house and eight lots. Defendant was unwilling to make the exchange unless the $6,500 mortgage was reduced to $2,500. For a time nothing came of the negotiations. Finally, at defendant's suggestion, Frank F. Hanford, another real estate broker, was employed to assist plaintiff in arranging the terms of the proposed exchange. On August 7, 1924, plaintiff and defendant, with Crichton and his son, met Hanford at his office. All testified as to what occurred on that occasion. The testimony was in conflict as to some of the facts. The court instructed the jury that the vital question was whether defendant and Crichton came to terms, and that if they did, and Crichton was able, ready and willing to take defendant's property on terms acceptable to defendant, plaintiff had earned a commission. This is the substance of the rule applied in a long series of cases involving real estate brokers' claims for commissions. Dun. Dig. § 1151. No exception to the instruction was taken by either party.

Defendant urges however that the evidence did not warrant the jury in answering the question in the affirmative.

It is conceded that at the close of the negotiations in his office Hanford prepared a memorandum, which was signed by Crichton but not by defendant. Among other things, the memorandum states that Crichton is to convey the University avenue property subject to the $6,500 mortgage and defendant is to receive from him $1,000 in cash and an assignment of a first mortgage of $2,500 on certain Minneapolis property with which defendant was familiar, the mort-

gage to be taken subject to the approval of his attorney. Another provision reads: "Concerning a shortage on one certain lease on Mr. Crichton's property, each party to the transaction is to stand half and half. Rent for August on Mr. Crichton's property to go to Mr. Rosenstein."

Much of the evidence relates to these two features of the memorandum. Defendant testified that he at no time agreed to take the mortgage until after he had consulted his attorney about it. Crichton testified that defendant agreed to take the mortgage if his attorney found it to be a first lien and, if not, that he (Crichton) was to pay $2,500 in lieu thereof. Other witnesses testified that Crichton was to pay the $2,500, in addition to the payment of $1,000 specified in the memorandum, if for any reason defendant decided not to take the mortgage after conferring with his attorney.

Considering the evidence as a whole, we think the jury might properly find that the agreement was that defendant should take the mortgage at its face value, provided the mortgagor's title was good and the mortgage was a first lien. Crichton testified to the existence of these two facts, and no attempt was made to contradict him. It follows that the verdict cannot be successfully attacked on the ground that defendant and Crichton never came to an understanding in respect to the mortgage.

Crichton had leased the University avenue property for a term of five years at a monthly rental of $130. The lessee had made a sublease for the unexpired term at a rental of $150 a month. In the course of the negotiations defendant had been told that the property was rented for $150 a month. He learned the true state of facts later and the subject was discussed at Hanford's office. The jury might find from all the evidence that it was there agreed that Crichton should pay defendant one-half of the difference in the rent for the unexpired term of the lease. True, Crichton testified to the contrary, and it is argued that, no matter what he may have said, he never intended to pay anything on this account and was not willing to make the exchange on terms acceptable to defendant. From our examination of the evidence on this point, we think the jury might

find that at the time of the trial Crichton had forgotten this detail. But it was part of the memorandum he signed, and he testified that his memory was not good and that he intended to go by what had been written down when the bargain was made.

It is argued that the parties could not have reached an agreement when they left Hanford's office because they were to meet the next morning at the office of defendant's attorney to have a formal contract prepared and signed. It would seem that, if they had not reached an agreement, there was no reason why both should have taken part in dictating the provisions of the memorandum Hanford prepared, and we find nothing in the evidence to indicate that negotiations were to be resumed on the following day, when Crichton kept the appointment but defendant did not. There was some evidence that the true reason for defendant's nonappearance was a hope that by holding off for a short time he might be able to get Crichton to take over all the Lake Minnetonka property instead of the portion described in the memorandum. But all these considerations were for the jury and are disposed of by their verdict.

Because plaintiff agreed to advance part of his commission to make up the sum to be paid to defendant, and because defendant testified that he had no knowledge of this fact, it is urged that plaintiff forfeited his right to receive a commission. Hobart v. Sherburne, 66 Minn. 171, 68 N. W. 841, is cited to support this contention. The case is not in point. It was one where an agent for a lessor was guilty of bad faith toward his principal. Without the knowledge of the latter, the agent agreed to look after the lessee's interests, as well as the lessor's, and divide with the lessee's agent the commissions the two were to receive. This was a plain disregard of the rule that an agent to sell or lease may not represent the prospective purchaser or lessee without fully and fairly disclosing the facts to his principal and obtaining his consent, and forfeits his right to compensation if he violates the rule.

In the present instance plaintiff did not represent Crichton. Nothing he did or agreed to do could be prejudicial to defendant. He was to take $100 out of his own pocket to help make up the thousand

dollars defendant was to receive from Crichton. Plaintiff was the loser, and if he was willing to take the loss no one else can complain. Moreover defendant was negotiating with Crichton directly and not through the plaintiff. If a bargain was made, its terms were those agreed upon by defendant acting in his own behalf. Under these facts and circumstances, there was nothing which savors of bad faith on the part of the plaintiff.

Order affirmed.