MURPHY WHOLESALE GROCERY CO. v. SKAGGS et al.

No. 4402.   Decided July 12, 1926.   (248 P. 127.)

1.  APPEAL AND ERROR. Questions not appearing in judgment roll nor preserved in bill of exceptions will not be considered on appeal.

2.  APPEAL AND ERROR—GRANTING OF MOTION TO CHANGE VENUE, INCORPORATED IN JUDGMENT ROLL, IS NOT AVAILABLE ERROR, WHERE COUNSEL'S ABSENCE AND NONCONSENT IS NOT SHOWN. Assignment of error in granting motion for change of venue, incorporated in judgment roll with supporting documents and court order, cannot be sustained, in absence of showing that plaintiff's counsel was not present, and did not consent to order.[1]

---

[1] *Broadbent* v. *D. & R. G. Ry. Co.*, 48 Utah, 598, 160 P. 1185.

Corpus Juris-Cyc. References:
[1]   Appeal and Error 4 C. J. p. 522 n. 77.
[2]   Appeal and Error 4 C. J. p. 528 n. 35.
[3]   Corporations 14 C. J. p. 878 n. 56.

3.  CORPORATIONS—FINDINGS IN CORPORATION'S ACTION AGAINST
    STOCKHOLDERS FOR MONEY RECEIVED FOR STOCK WHETHER COR-
    PORATION WAS INSOLVENT, AND MONEY PAID FOR STOCK, WHICH
    COURT FOUND WAS RESOLD TO ITS PRESIDENT, NOT ITSELF, WAS
    PAID FROM WORKING CAPITAL, HELD UNNECESSARY. In corpora-
    tion's action against Stockholders for money received for stock
    resold to plaintiff, where court found that defendants sold it to
    plaintiff's president, not to corporation itself, it was immaterial,
    and unnecessary to find whether plaintiff was insolvent and
    money paid from its working capital, or whether defendants knew
    of such facts.

    GIDEON, C. J., dissenting.

Appeal from District Court, Third District, Salt Lake
County; *M. L. Ritchie,* Judge.

Action by the Murphy Wholesale Grocery Company
against O. P. Skaggs and another Judgment for defendants,
and plaintiff appeals.

*A*FFIRMED.

*John G. Willis,* of Ogden, for appellant.

*Hutchinson & Hutchinson,* of Salt Lake City for respond-
ents.

THURMAN, J.

Plaintiff alleges in its complaint that it is a corporation
existing under the laws of Utah, engaged in the business of
"buying and selling groceries, drugs, and merchandise at
wholesale, and the manufacturing thereof, such as the prose-
cution of said business may require, and the buying and
selling, leasing and holding, of all such real and personal
property as may, from time to time, be necessary or desir-
able in the furtherance of its business."

The complaint further alleges that on or about May 10,
1923, defendants became stockholders of the plaintiff by

purchase of its stock, amounting to 51 per cent thereof, and that they continued as such stockholders until on or about Aug. 18, 1923; that on July 20, 1923, defendants sold said shares of stock to the plaintiff, and delivered the same on said Aug. 18, 1923, for the sum of $25,500; that said amount was paid in installments on and between said July 20 and Aug. 18, 1923. The complaint further alleges that at the time of said sale and purchase of said stock, and the payment of said money therefor, defendants well knew that said sums of money, and each of them, were the money and property of the plaintiff, and that defendants also knew that said sums of money were being paid to them from the capital stock— the working capital of plaintiff—and that said working capital was being diminished and lessened to the extent of said $25,500, and that said plaintiff had no surplus money, or property than its said working capital. Finally, it is alleged that at the time of said sale and purchase of said stock plaintiff was, and for some time had been, indebted to various creditors in large sums of money incurred in the promotion of its business, all of which the defendants well knew; that by the purchase of said stock and the payments of said money therefor by plaintiff to defendants plaintiff became and is, insolvent, and was thereby rendered unable to pay its just debts and liabilities incurred in the prosecution of its said business to an extent aggregating a sum in excess of $25,500, concerning all of which defendants were fully informed; that plaintiff is unable to pay its creditors in full, and there is, and will remain unpaid to said creditors, by reason of the premises aforesaid, sums of money aggregating in excess of $25,500, which plaintiff is unable to pay, for the reason that it has no assets or property from which such payment can be made. Plaintiff prays judgment for said amount, interest thereon, attorneys' fees, and costs.

Defendants, answering the complaint, admit the corporate existence of plaintiff, the character of its business, and that they were stockholders of plaintiff, as alleged in the com-

plaint, except that they allege they ceased to be such stock-holders on or about July 19, 1923. Defendants deny the remaining allegations of the complaint, and the whole thereof.

The case was tried to the court without a jury. The court found in favor of defendants, and plaintiff appeals to this court for a reversal of the judgment. The errors assigned principally relate to the findings of the court. Exceptions are taken to each of the findings, and also to the failure to find upon certain issues alleged to be material.

Before discussing the exceptions relating to the findings, it is necessary to determine one exception to which we have not referred. The action was originally commenced in Weber county. The defendant Skaggs resided in Oakland, Cal., and the defendant Holt in Salt Lake City, Utah. The defend-ants first appeared by motion challenging the jurisdiction of the court. This motion was afterwards amended and treated as a motion for a change of venue. The motion was granted, and the cause transferred to Salt Lake City, where the case was tried. Plaintiff assigns as error the order granting the change of venue. Respondent objects to the consideration of this assignment, for the reason that mat-ters relating to a change of venue are not part of the judg-ment roll, and in the case at bar they are not included in the bill of exceptions.

It is elementary in this jurisdiction that questions not appearing in the judgment roll and not preserved in a bill of exceptions will not be considered by the court on appeal. A question similar to this was decided adversely to the contention of appellant here in *Broadbent* v. *D. & R. G. Ry. Co.*, 48 Utah, 598, 160 P. 1185. In the instant case the motion for change of venue and documents in support thereof, together with the order of the court thereon, are incorporated with the judgment roll, and there is nothing whatever to show that plain-tiff's counsel was not present in court and consented to the

order now complained of. This assignment cannot be sustained.

In order to understand the question raised concerning the findings of the court and its failure to find, it is necessary, before proceeding further, to make brief reference to the main features of the evidence, as disclosed by the record. In doing so we will indulge largely in conclusions rather than to undertake to detail the evidence.

In March, 1923, the plaintiff, as a corporation, was doing business in Ogden, Utah, as a wholesale grocery concern. Defendants were doing a retail grocery business in Salt Lake City, Utah, and in several of the adjoining states. In April, 1923, plaintiff moved its business to Salt Lake City. About 90 per cent of its entire business was with the defendants Skaggs and Holt. Skaggs and Holt purchased groceries from plaintiff under written contracts, and the goods as ordered were shipped to the various concerns operated by the defendants. In May, 1923, defendants became stockholders in the plaintiff company purchasing from C. S. Murphy 51 per cent of its capital stock. C. S. Murphy, who had been manager of the plaintiff company before, was continued in that position after Skaggs and Holt purchased the stock. In July, 1923, defendants became dissatisfied with Murphy's management, and became desirous of either changing the management or disposing of their stock in the plaintiff company. At this point there is a wide divergence between the testimony of Murphy on the one side and Skaggs and Holt on the other as to what was said in the many interviews that were had leading up to the sale of the stock. The effect of Murphy's testimony is that he informed defendants that plaintiff was not able financially to buy the stock; that it was heavily indebted to various creditors; that it was then unable to take care of its discounts, and certain creditors were pressing for payment. In other words, according to Murphy's testimony, he conveyed the information to defendants that the plaintiff was unable to pay the sum of $25,500 for the stock, and that to

attempt to do so would result in the plaintiff becoming insolvent, but that defendants insisted it could be done and proposed different expedients looking to that end. The whole meaning and effect of Murphy's testimony was that the sale of the stock was made by defendants to plaintiff company under such circumstances as practically amounted to duress and compulsion. He was in their power. Practically all of his business was with them, and to refuse to purchase the stock meant loss of their business and his removal as manager of the concern. Such was the effect of his testimony as we glean it from the record. On the other hand, both Skaggs and Holt testified to the effect that the sale of the stock was not made to the plaintiff company, at all, but was made to Murphy personally; that they purchased the stock from Murphy personally in May, 1923, for $25,500, and, upon becoming dissatisfied with the management, in July of the same year, informed him of their dissatisfaction, and offered to sell the stock to him at the same price they paid for it in March; that Murphy accepted the offer and paid for the stock as hereinbefore stated. Defendants deny that any information was given them by Murphy as to the financial condition of the plaintiff, or that it was in straightened financial circumstances. This evidence was supplemented by the fact that in May, just two months before the negotiation was entered upon for a sale of the stock, the plaintiff promulgated a financial statement, from which it appeared that it had a surplus of over $74,000 to the credit of the company. The explanation as to what became of this surplus between May and July, 1923, is not clear and satisfactory, but, in any event, there is a conflict in the evidence as to the financial condition of the plaintiff when defendants sold the stock. Murphy testified that in the course of their negotiations pertaining to the sale of the stock, and when he told defendants plaintiff was unable to pay for the stock, Skaggs suggested he could pay for it from the weekly remittances which defendants would make for goods purchased from plaintiff. Both Skaggs

and Holt testified that no such proposal was made. Murphy also testified that Skaggs said he did not want to know where the money came from to purchase the stock, which was also denied by the defendants. The deal was finally closed on July 19, 1923. $10,000 was paid in cash, and a note signed by C. S. Murphy for the remainder, payable in two installments of $7,750 each, payable August 1st and August 18th, respectively, at which time a new contract was made, continuing business relations between plaintiff and defendants. The transaction was completed in the office of the defendants' attorney, Mr. W. R. Hutchinson, at which time Skaggs announced that he was leaving the city, and would leave the matter with Mr. Hutchinson, to whom the payments should be made. Mr. Hutchinson said, if payments were to be made to him, he wanted them in cash. When asked if certified checks would do, he answered "Yes." It appears from the record that the money was obtained by checks of the Murphy Wholesale Grocery Company, for which certified checks were obtained in favor of W. R. Hutchinson. The checks, however, were cashed by Murphy without Hutchinson's indorsement and Hutchinson was paid in cash.

There are many sidelights in the case that would perhaps be more or less illuminating if we deemed it necessary to refer to them in detail, but in our view of the questions to be determined it is unnecessary to assume that burden. It may be said once for all that the evidence is more or less conflicting on every material issue of the case. The trial court, in our opinion, was amply warranted in all the findings it made, and the only serious question is, Did the court find on all the material issues raised by the pleadings? The fourth, fifth, and sixth paragraphs of the complaint read as follows:

"(4) That, while the said defendants were such stockholders of plaintiff, and on the 20th day of July, 1923, they sold said stock by them so owned to plaintiff, and on the said 18th day of August, 1923, the defendants delivered said 571.71 shares of said stock so repre-

sented by said certificates numbered 30, 31, and 32 to plaintiff, receiving as consideration of said sale and delivery, from the plaintiff, the sum of $25,500, which sum was paid defendants by the plaintiff in amounts as follows:  On July 20, 1923, the sum of $10,000; August 1, 1923, the sum of $7,500; August 1, 1923, the sum of $250; August 18, 1923, the sum of $7,750.

"(5) That at the time of the said sale by defendants, and the purchase of said stock by plaintiff, and at the time of the delivery thereof and of the payment of said sums of money by plaintiff to defendants, as aforesaid, each the said O. P. Skaggs and George A. Holt well knew that said sums of money, and each thereof, were the money and the property of the said Murphy Wholesale Grocery Company, plaintiff herein; and also the defendants, and each thereof, at said times well knew that said sums of money, and each thereof, were and was being paid them for said capital stock, so by them sold to plaintiff, and by it so purchased, as aforesaid, from the working capital of said corporation; and they, and each thereof, then well knew that said working capital of plaintiff was being, by said payments of said sums, and the abstraction thereof from said working capital of plaintiff, diminished and lessened to the extent of $25,500, and that said corporation had not other, nor any, surplus money or property than its said working captial.

"(6) That, at the time of the said sale of said stock by defendants, and the purchase thereof by plaintiff as aforesaid, said corporation had no property or money save and except its said working capital; nor had it any assets from which moneys might, or could be, obtained, save and except its said working capital.  That said corporation was then, and it had for some time prior thereto been, indebted to various creditors in large sums of money, aggregating in excess of the sum of $25,500, which indebtedness had been incurred by plaintiff in and about the prosecution of its said business, all of which the defendants, and each thereof, then well knew.  That by the said sale to and purchase by plaintiff of said stock, made as aforesaid, and the payments of said sums of money by plaintiff to defendants therefor, plaintiff became, and was, and continues to be, insolvent, and it was thereby made and rendered unable to pay its just debts and financial obligations incurred in the said prosecution of the said business, to an extent and in sums aggregating in excess of $25,500, concerning all of which the defendants, and each thereof, during the said times knew, and were fully informed of."

The foregoing allegations were denied by defendants, and, as far as material, were an issue in the case.  As we have

shown, evidence pro and con was admitted concerning them. In this connection we quote findings 3, 4, and 5:

"(3) The court finds that on or about the 20th day of July, 1923, the defendants did not sell the stock so owned by them and purchased as aforesaid to the plaintiff company but resold the same to one C. S. Murphy at the same price as paid for same by the defendants and each of them, to wit, the sum of $25,500.00, which said sum was paid to the defendants and each of them by the said C. S. Murphy in amounts as follows, to wit:   On July 20, 1923, the sum of $10,000.00; August 1, 1923, the sum of $7,500.00; August 1, 1923, the sum of $250.00; August 18, 1923, the sum of $7,750.00, and that on or about the 18th day of August, 1923, said shares of stock constituting 51 per cent of the issued and outstanding capital stock of plaintiff company was delivered to the said C. S. Murphy, and the defendants at the time of said delivery ceased to be stockholders in plaintiff company.

"(4) The court finds that, at the time of said sale by the defendants and the purchase of said stock by the said C. S. Murphy, and at the time of the delivery thereof, and of the payments of said sums of money by C. S. Murphy to the defendants as aforesaid, O. P. Skaggs and George A. Holt were not dealing in any manner relative to said sale with the plaintiff corporation, and knew nothing of the plaintiffs company's financial status, and that O. P. Skaggs and George A. Holt did not receive any moneys whatsoever from the plaintiff company in payment for said stock so sold, but the court finds that the defendants and each of them dealt with the said C. S. Murphy and the said C. S. Murphy paid the total sum to them for the purchase price of said shares of stock so delivered to him.

"(5) The court finds that the defendants O. P. Skaggs and George A. Holt and each of them had no knowledge of the financial condition of the Murphy Wholesale Grocery Company, the plaintiff herein, and had no knowledge of its assets and liabilities or the amount of its working capital on or about the 20th day of July, 1923, and at the date when the defendants purchased said shares of stock from C. S. Murphy, as herein found, and the court further finds that at all the times mentioned in plaintiff's complaint C. S. Murphy was the president and general manager of the Murphy Wholesale Grocery Company, a corporation, and that at no time were defendants, or either of them, officers or directors of said corporation, but were merely stockholders, as therein found."

In comparing the allegations of the complaint which we have quoted with the above findings of the court, it will be noted that the court did not find whether or not the defend-

ants knew that the money they received for the stock was the money of the plaintiff company, or whether defendants knew that the money was being paid them from the working capital of the plaintiff corporation, and that plaintiff had no surplus or other property than its working capital. Appellant excepts to these omissions in the findings.

Appellant also excepts to the omission to find upon the issue raised in the sixth paragraph of plaintiff's complaint, which, among other things, contains the allegations that, at the time of the sale of said stock, defendants knew that, by the purchase of said stock by plaintiff and the payment of said money therefor by plaintiff to defendants, plaintiff became, and was, and continues to be, insolvent, and unable to pay its just debts and financial obligations in the prosecution of its business, concerning all of which defendants during said times knew and were fully informed.

The question is, Are these issues material, and, if so, are the findings, as made, broad enough to cover them?

When the trial court reached the conclusion that defendants did not sell the stock to the plaintiff company at all, but sold it to Murphy personally, as a necessary corallary it could reach no other conclusion than that the question of plaintiff's solvency or insolvency was wholly immaterial. The same is true as to the source of the money with which Murphy paid for the stock, and whether or not defendants had knowledge of these facts. If the testimony of Murphy be accepted as true, it is conceivable that a grievous wrong was perpetrated against the plaintiff company, its creditors, and other stockholders by both Murphy and the defendants. In other words, if Murphy and the defendants, at the time the stock was purchased, knew that the plaintiff was insolvent, and that the money paid for the stock was the property of the plaintiff, it goes without saying that the whole transaction was an egregious fraud, of which either the stockholders or creditors would have a legal right to complain. But this action was not instituted upon any such theory. The very foundation of

plaintiff's action is that defendants sold the stock to the plaintiff, which, under the circumstances, they had no authority to do, and that therefore the sale was void and defendants under legal obligation to return the money, with interest thereon. The court found that such was not the case; that defendants did not sell to plaintiff, and consequently the foundation of plaintiff's action crumbled, and with it every issue based upon the theory that plaintiff purchased the stock.

Having arrived at this conclusion, it is unnecessary to consider the other errors assigned.

The judgment is affirmed, at appellant's cost.

FRICK and CHERRY, JJ., concur.

STRAUP, J. I concur with Mr. Justice THURMAN.

The gravamen of the action, as stated in the complaint, is that the defendants sold the stock to the company, and that it purchased it from them when it was insolvent, of which the defendants had knowledge, and hence the company sought to recover back the moneys which it alleged it had so paid to the defendants. The defendants denied that they sold the stock to the company, or that they received any money from it or that they had any dealings whatever with or on behalf of the company, or that they had any knowledge of the company's financial status or condition, and alleged that they originally bought the stock from Murphy, and sold it back to him at the same price, and that Murphy, and not the company, paid them the full purchase price. As is seen by findings 3, 4, and 5, these issues were specifically found in favor of the defendants. That such findings are well supported by the evidence the record clearly shows.

The claim, however, is made that, since it was alleged and denied that the moneys with which the stock as purchased were "moneys and property" of the company, of which the defendants had knowledge, the court was required to make a direct or specific finding as to such ultimate

fact, but failed to do so. I think there are two answers to the contention. In the first place, when the court found that the stock was not sold to the company, but to Murphy, who paid the purchase price, and that the defendants received no moneys from the company, and had no dealings with it, plaintiff's cause of action as stated in the complaint was gone. There are no allegations in the complaint that Murphy wrongfully took moneys of the company and converted them to his own use and with them purchased the stock, or that the defendants had any knowledge of such fact, or that the defendants, with such knowledge, sold the stock and received the funds, and were thus themselves guilty of a conversion of them. The complaint does not proceed on any such theory. It proceeds on the theory that the company itself purchased the stock and itself paid for it, and seeks to recover the moneys back so paid by it on the ground that it, because of its insolvency, had no lawful right to purchase the stock. All of the essential allegations in such respect were directly and specifically found against the company; and the company, on appeal, may not now convert its cause into one of conversion and on an entirely different theory. It is bound by its cause as laid.

In the second place, when the court found that the defendants sold the stock to Murphy, and not to the company, that Murphy and not the company paid the full purchase price, that the defendants received no money from the company, and had no dealings with it, such findings imply that the stock was purchased with funds of Murphy, and not of the company, and a want of knowledge of the defendants that the funds belonged to another or to the company.

With respect to the evidence, I think the great preponderance of it shows that the defendants had no knowledge that the moneys with which the stock was purchased by Murphy were funds of the company or of any one except Murphy, or from what source he obtained them.

GIDEON, C. J. (dissenting). The plaintiff corporation

never, by any act of its directors or otherwise, authorized the use of its funds to purchase the stock of defendants. No claim is made that the corporation ever authorized such expenditure, nor is there any proof to support such a claim. Whether plaintiff's funds were so used, and whether defendants knew that the money they were receiving in payment for their stock belonged to the corporation, are, in my judgment, material questions. Findings on these questions would be determinative of the liability of the defendants to pay the amount sought to be recovered. That the defendants knew that the money they were receiving was the property of the plaintiff was alleged in the complaint, and this allegation was denied in the answer. It became, therefore, an issue made by the pleadings, and a material issue in the case. The testimony in the record is conclusive that the money received by the defendants was the money of the plaintiff corporation. Everything in the record, all the circumstances, in additon to the testimony of Mr. Murphy, is all but conclusive that the defendants knew that the money they were receiving was the money of the plantiff. We have, then, this situation: These defendants have $25,000 of the plaintiff corporation's money, admittedly obtained without any authorization of its board of directors. The plaintiff corporation is denied a recovery by reason of the fact that the complaint alleged, under paragraph 4, that defendants sold their stock to the plaintiff. Just what negotiations were had or artifices devised by Murphy and the defendants to take the money from the corporation and give it to the defendants is, as I view this record, very largely immaterial. The fact that the defendants received money that belonged to the corporation and that they knew such fact, are issues fairly presented by the pleadings, and upon which the court should have made findings. It should be kept in mind that there is no pretense that the corporation ever authorized any such use of its funds. The allegations of the fourth and fifth paragraphs of the complaint are set out in full in the prevailng opinion. The right of the

plaintiff to recover against the defendants grows out of the allegations of the fifth paragraph, and not of the fourth. The trial court apparently was of the opinion that the plaintiff failed to establish that the defendants had sold their stock to the corporation, and hence that there was no right of recovery on the part of the plaintiff, and no liability on the part of the defendants. The trial court, in my judgment, was in error in taking this narrow view of the issues presented by the pleadings, or that a finding that the sale of defendants' stock was made to Murphy and not to the plaintiff company would defeat plaintiff's right of recovery. The gist of the plaintiff's right to recover is the fact that the defendants obtained the funds of the corporation without any authorization on its part. In other words, the claimed inducements stated under the fourth paragraph of the complaint ought not defeat the corporation's right to recover, where, as here, other facts are charged in the complaint that state a cause of action against the defendants upon which the plaintiff is entitled to recover. Neither ought the defendants be permitted to hide behind their ignorance of the financial condition of the plaintiff company and plead that they did not know whether it was solvent or insolvent. If the corporation was insolvent, then in that event it held the corporate assets as trustee for the benefit of its creditors. If by the withdrawal of its funds to pay for the defendants' stock the corporation became insolvent, in that event the withdrawal of its funds for that purpose was a fraud, not only upon the creditors, but upon the stockholders. If the corporation was insolvent, or became insolvent by the withdrawal of these funds, then in that event it is entitled to judgment to recover these funds for the use and benefit of its creditors and of its stockholders.

The cause should be remanded to the district court, with directions to make findings upon the issues presented by the pleadings, and, if need be, permit the parties to amend the pleadings and determine the case upon its merits.