## VAN LEEUWEN v. HUFFAKER.

No. 5021. Decided December 3, 1931. (5 P. [2d] 714).

*S. D. Huffaker,* of Salt Lake City, for appellant.

*D. B. Hempstead,* of Salt Lake City, for respondent.

DILWORTH WOOLLEY, District Judge.

This is an action brought by plaintiff to recover a judgment for a commission alleged to be due a real estate broker. There was a trial before the court and a jury which resulted in a judgment, entered upon a directed verdict, in favor of defendant, from which plaintiff appealed. That judgment was reversed and the cause remanded for a new trial. 74 Utah 441, 280 P. 235. Another trial was had, but before the court sitting without a jury, at the conclusion of which findings of fact and conclusions of law were made and judgment was made and entered thereon in favor of plaintiff. Defendant now appeals from the latter judgment.

The appellant has made twelve assignments of error; but he has said nothing in his brief or in the oral argument about Nos. 6, 7, 8, 10, and 12, or about the questions raised thereunder, and we therefore regard them as having been abandoned and pass them by without further comment thereon. *Kelly* v. *Moab State Bank et al.*, 64 Utah 290, 230 P. 566; *Berg* v. *Otis Elevator Co. et al.*, 64 Utah 518, 231 P. 832.

Assignment No. 1 is to the effect that the court erred in denying defendant's motion for a jury trial and in making the following order under date of December 3, 1929:

"The above case is hereby assigned to the Honorable James W. McKinney, Judge, for trial, and defendant's motion for a trial by jury is hereby denied."

While assignment No. 2 is that the court erred in the recitals to the findings of fact wherein the court recites "a jury trial having been expressly waived by the respective parties appearing therein," for the reason that defendant did not waive a jury trial, but demanded a jury trial, and the same was denied.

This court cannot review the action of the trial court with respect to the matter of the motion for a jury trial, if one was made, or consider said assignments upon their merits, because the alleged order upon which these assignments are based and the proceedings had in connection therewith, if there were any, are not authenticated or exhibited to this court in the manner required by the Code. The Code provides for two methods by one or the other of which an order or ruling of the trial court must be preserved and presented if the same is to be reviewed by this court upon an appeal. The one method is to show the same in the judgment roll; and the statute provides just what shall appear in a judgment roll. The other is to incorporate the same in a bill of exceptions. All matters which do not appear in the judgment roll by force of the statute must be shown in the bill of exceptions, if they are to be reviewed by this court. The

judgment roll and the bill of exceptions, if there be one, shall constitute the record on appeal to the Supreme Court. Comp. Laws Utah 1917, § 6992. The case is here upon what purports to be a judgment roll of the second trial and a bill of exceptions. The bill of exceptions consists of a transcript of the reporter's notes of the evidence adduced and the proceedings had at the second trial, which was before Judge James W. McKinney. There is no reference whatever in the bill of exceptions to the matter of the motion for a jury trial; the order or ruling mentioned in assignment No 1, purporting to have been made by Judge Moffat, on December 3, 1929, is not mentioned in the bill. So far as the bill of exceptions discloses, the defendant went to trial before Judge McKinney, sitting without a jury, without objection or protest. So there is nothing in that part of the record to impeach the recital contained in the findings which is referred to in assignment No. 2, or to support assignment No. 1. What appellant has attempted to do, apparently, is to have the alleged ruling and order of December 3, 1929, incorporated in the judgment roll, for we observe among the papers in the judgment roll what purports to be a copy of a minute entry of an order made by Judge Moffat on that date which is in the language set out in assignment No. 1. But the attempt is ineffective because it is not made to appear that Judge Moffat settled and signed an exception, which was filed with the clerk at the time the ruling was made, as contemplated by Comp. Laws Utah 1917, § 6970, so that the same would become a part of the judgment roll under the provisions of Comp. Laws Utah 1917, § 6867, subd. 2, as amended by Laws of Utah 1925, chap. 52, which provides what shall constitute the judgment roll in cases of this kind, and the ruling or order not being shown to be one which is deemed to have been excepted to under section 6966, having been made in the absence of the defendant or his counsel. The order therefore is not shown to be one which should properly be included in the judgment roll and its inclusion therein amounts to nothing, and not being a part of the judgment roll or being shown in the bill of

exceptions, and hence not a part of the record on appeal, this court can take no notice of it, nor can it review the action of the trial court with respect thereto. *Murphy Wholesale Grocery Co.* v. *Skaggs et al.*, 67 Utah 487, 248 P. 127; *Mary Jane Stevens Co.* v. *Foley et al.*, 67 Utah 578, 248 P. 815; *Cornelius* v. *Mohave Oil Co. et al.*, 66 Utah 22, 239 P. 475.

To make ourselves perfectly clear with respect to the matter, let it be added that if the defendant had taken an exception to Judge Moffat's ruling and thereupon had Judge Moffat settle and sign an exception and filed it with the clerk, then the same would have become a part of the judgment roll under the statute and this court could review the matter; or if the order had been made in the absence of the defendant or his counsel, it would also become a part of the judgment roll and would be presented for review in this court. But neither of those requirements appearing, and the order not being one which otherwise becomes a part of the judgment roll by virtue of the statute, the inclusion of a copy of the minute entry of the order among the papers in the judgment roll is a nullity. What the defendant should have done was to have a copy of the minute entry, showing his exception to the ruling, included in the bill of exceptions which was settled by the judge who tried the case, when he failed to have Judge Moffat settle an exception and file it with the clerk at the time the ruling was made.

Assignments 3, 4, and 5 attack certain of the findings of fact. The trial court found that Davis, the broker who is the assignor of the cause of action upon which the action is brought, secured a customer, Waite, who was ready, able, and willing to trade, and who did trade, certain real estate owned by him, to wit, the Cozy Dale Farm, for the real estate described in the listing contract, upon terms acceptable to the defendant; and that Davis, through his efforts, in whole or in part, brought the minds of Huffaker and Waite together in the trade which was made; and that Davis performed all the terms and con-

528

ditions of said contract on his part to be kept and performed; and hence the trial court concluded as a matter of law that Davis was, and the plaintiff as his assignee is, entitled to the claimed commission. By the assignments herein mentioned appellant challenges the foregoing findings, claiming that they are not supported by, but are contrary to, the evidence. His claim, in short, is that Waite was not willing to trade through Davis and that it was Epperson, another broker, and not Davis, who brought the contracting parties together in the exchange of properties which admittedly was made by them. There are two reasons why this contention of appellant cannot be sustained. In the first place, the question of whether or not the exchange of defendant's property for the Cozy Dale Farm was brought about through the efforts of Davis, in whole or in part, is a question of fact to be determined by way of inference from other facts established by the evidence in the case. It is to be determined in the first instance by the trial court; and when so determined, this being a law case, if it be supported by sufficient competent evidence, the finding of the trial court thereon is binding upon this court. *Knight* v. *Wessler et al.*, 67 Utah 354, 248 P. 132. That there is competent evidence to support such findings cannot now be gainsaid, for the evidence upon that question at the second trial was substantially the same as at the first trial; and this court held on the first appeal that it was sufficient to take the case to the jury, which might find either way. In the second place, appellant now makes the very same contentions under said assignments that he made in the first appeal to support the judgment which was in his favor, and this court decided against him on such contentions, holding that the jury might well find from the evidence that Davis' efforts were the procuring cause of the exchange of properties. The holding in the first appeal is therefore decisive of the questions sought to be raised under the assignments now under consideration. Upon this point respondent cites, from the many cases which might be cited, the following: *Potter* v. *Ajax Mining Co.*,

22 Utah 273, 61 P. 999; *Tyng* v. *Constant-Loraine Inv. Co.,* 47 Utah 330, 154 P. 767; *Grow* v. *Oregon S. L. R. Co.,* 47 Utah 26, 150 P. 970; *Requa* v. *Daly-Judge Mining Co.,* 46 Utah 92, 148 P. 448. See, also, *Utah State National Bank* v. *Livingston,* 74 Utah 456, 280 P. 327.

Assignment No. 9 is that the court erred in its conclusions Nos. 1 and 2 in the judgment rendered herein, whereby the court found that appellant was indebted to respondent in the sum of $750, for the reason that said conclusions and judgment are contrary to law, and that under the evidence the judgment should have been in favor of appellant, and for the further reason that the undisputed evidence is to the effect that said Ross C. Davis agreed that in no event would his commission be more than $300, and for the further reason that said Ross C. Davis had contracted to collect a commission from both said Waite and appellant, and that, because of the premises, he could not collect from either.

It will be observed that this assignment suggests several questions which might well be argued and some of which may be said to be debatable as legal propositions, at least so far as they apply to the evidence in this case; but the only question which counsel has chosen to discuss in the brief and at the oral argument under this assignment is that relating to an alleged agreement between Davis and Huffaker to the effect that Davis would in no event exact more than $300 as a commission in case he brought about a sale or trade of the Huffaker property. Hence, as this writer views the situation, that is the only question which this court need or ought to decide. But as to the proposition just stated, as will later appear, the writer is not in agreement with a majority of the members of this court.

Reverting, however, to the point raised in the briefs, the written contract upon which the action is brought is in evidence. It is in the form of a letter addressed to Ross C. Davis and signed by Huffaker, and reads, among other things, so far as is material to this opinion, as follows:

"If through your efforts, in whole or in part, I sell or trade the following described property, or any part thereof, at the price and terms hereafter mentioned or otherwise, I agree to pay you a commission of 5 per cent. on the first $_____ and 5 per cent. on the balance of the sale price thereof.

"You are authorized to sell said property for $15,000, payable $1,000 in cash and the balance of $14,000 payable $50.00 per month with interest on the unpaid portion of the purchase price at 7 per cent. per annum."

Davis testified that Huffaker signed said contract on February 19, 1927, and at that time Huffaker placed a valuation of $15,000 upon the city property therein described. The defendant Huffaker, referring to what was said between himself and Davis about commissions at the time the contract was signed, testified as follows:

"He said, 'What do you hold your place at?' I said, 'Twelve thousand dollars.' He said, 'Is that cash?' I said, 'That is twelve thousand dollars cash.' He said, 'Then you had better—on a trade generally put it up a little more than that.' He mentioned to put it in at fifteen thousand, and I said, 'Well, it is all right with me to put it in at that, if you think you can get it through, but I won't pay you more than three hundred dollars, Mr. Davis, for putting it through.' He said, 'All right, I will take that for the three hundred dollars, but don't say anything to Mr. Waite about the commission.'"

Davis did not deny this testimony; he was not asked about the matter. It is all the evidence there is in the record bearing upon the subject of the amount of commission, aside from the contract itself, except that there is testimony to the effect that Davis claimed the right to a commission from Waite but could not collect it because his contract with Waite was not in writing.

The appellant's contention is that the uncontradicted evidence being to the effect that the broker Davis agreed to accept $300 as a full commission in the event he succeeded in closing the deal, therefore in any event the trial court should not have granted judgment for more than $300. This contention cannot be sustained because whatever was said between Davis and Huffaker concerning the amount of the

commission, prior to and at the time of the signing of the written listing contract, was merged in the written contract. *Halloran-Judge Trust Co.* v. *Heath et al.,* 70 Utah 124, 258 P. 342, 64 A. L. R. 368. The writing defines the rights of the parties with respect to the amount of commission which is to be paid, and any evidence tending to vary or contradict the terms of the written instrument is incompetent, in the absence of fraud, mistake, or misrepresentation, none of which is claimed in this case, and hence must be disregarded by the court.

Assignment No. 11 relates to a question of the admissibility of secondary evidence of the contents of a written instrument. It appears by the record that Davis was called as a witness for the plaintiff. He testified in substance that he brought Waite and Huffaker together in his office where they agreed upon terms by which Huffaker would trade his city property which he had listed with Davis, together with another tract, for the Cozy Dale Farm owned by Waite; that he prepared a contract for them to sign, but they did not sign it; that they left the office, stating that they would return about 4 o'clock that afternoon, but they did not return. About 5 o'clock in the afternoon he met Huffaker on the sidewalk, and Huffaker then stated to him that he and Waite had gone over to Epperson's office and Epperson had prepared a contract for the exchange of the properties, which he and Waite had signed, and that he (Huffaker) had agreed in that contract that he would pay Davis a commission of $250. Davis further testified that while they were talking Waite came along, and he, in the presence of Huffaker, related the same things that Huffaker had just stated, and produced the contract referred to by both himself and Huffaker which had been prepared by Epperson; that the contract was in typewriting and signed by both Waite and Huffaker, and Epperson's name was on it, but witness did not remember whether as a witness or as a party; that he read the contract. The witness was then directed by his counsel to state the contents of the contract. Counsel for defendant objected on the

ground that it was incompetent and irrelevant, the contract itself being the best evidence. Counsel for the plaintiff stated to the court that he had made written demand upon counsel for defendant, prior to the first trial, to produce said contract at the trial and gave notice that, if it were not produced, then secondary evidence of its contents would be introduced, and he then called upon defendant to produce it. It was not produced. The court stated that he thought the notice served prior to the first trial was sufficient and overruled the objection, to which defendant excepted. This ruling is assigned as error. The defendant's objection being overruled, the witness then went on to relate the contents of the contract, saying that it provided that Huffaker agreed to deed to Waite the Salt Lake City property, subject to a mortgage for $3,800, and the Redwood Road five acres, subject to a mortgage for $500, which mortgages Waite was to assume and pay, for the Cozy Dale Farm, subject to a mortgage for $2,700, which Huffaker assumed and agreed to pay; and that the contract also provided that Huffaker was to pay Davis a commission of $250 and Waite agreed to settle the commission with Epperson.

We have a statute (Comp. Laws Utah 1917, § 7117) which provides that:

"there can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: 1. When the original has been lost or destroyed, in which case proof of the loss or destruction must first be made; 2. When the original is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice."

There are other provisions to the section, but they have no bearing in this case.

A reading of the transcript shows that the trial court, in ruling upon the objection, had in mind only the question of whether or not the notice to produce which was served prior to the first trial was sufficient to entitle plaintiff to prove the contents of the contract by secondary evidence; and the court being of opinion that such notice was suffi-

cient, overruled the objection. We agree with the trial court that the one notice was sufficient, so far as that matter is concerned, for all that the statute requires is reasonable notice; and therefore the objection on the ground that plaintiff had not given another notice prior to the second trial was not well taken. But the defendant's objection went farther than that. The objection on the ground of incompetency raised another question which the court seemingly did not consider. As the record then stood plaintiff had not made any showing which would entitle him to introduce secondary evidence of the contents of the written contract. He had not shown that the original was lost or destroyed, or that the original was in the possession of the defendant. So far as the record then stood, the evidence showed that the last time the contract was seen it was in the possession of Waite, who was not a party to the action. Therefore the court was in error when it overruled the objection.

The error was rendered harmless, however, by what transpired afterward during the trial. The defendant, in his cross-examination, without objection, testified:

"When Waite showed Mr. Davis the contract on the sidewalk Mr. Davis said he would sue me if I didn't pay the commission. * * * The contract shown Mr. Davis on the sidewalk was in writing. I think the contract provided that I was to pay Mr. Davis $250.00. I told them I wouldn't sign that contract if I had to pay a commission to both parties. Mr. Davis refused to take $250.00 *and them papers were destroyed.* I never signed the contract shown Mr. Davis on the sidewalk." (Italics supplied.)

On redirect examination by his own counsel he testified:

"We came to the conclusion that Mr. Davis should have something for taking us to Ogden and showing the farm and that is the reason the $250.00 was put in the contract that Mr. Waite showed to Mr. Davis."

Then again it appears that Waite testified as a witness for plaintiff at the first trial, but plaintiff refused to call him as a witness at the second trial. Thereupon defendant, after showing that Waite was not then within the jurisdic-

tion of the court, read in evidence on behalf of defendant testimony which he gave on the former trial, in which appears the following:

"Mr. Huffaker and Mr. Davis were talking on the sidewalk in front of the Ness Building when I came up and showed them the exchange agreement between me and Mr. Huffaker. I had the agreement in my possession. The agreement provided that Mr. Huffaker was to pay Mr. Davis $250.00 commission. I requested that the $250.00 be put in the agreement. The agreement was turned back into Mr. Epperson's office and at least one of them was destroyed."

It thus appears that defendant himself in his own testimony admitted substantially all that plaintiff sought to prove by the contract and also by his own testimony and that of Waite supplied the proof which plaintiff ought to have furnished in order to render competent the admission of secondary evidence of the contents of the written contract, by showing that the original had been destroyed. Such being the state of the record, we do not see how the error of the trial court could have resulted in any prejudice to the substantial rights of the defendant. The judgment should not be reversed on account of such error. Comp. Laws Utah 1917, § 6622; 4 C. J. 996.

It is said that because the evidence showed that Davis represented and claimed the right to a commission from both Huffaker and Waite in the transaction, therefore he is not entitled to recover from either, and hence the judgment is contrary to law. The general rule is that a real estate broker employed to sell, purchase, or exchange property for a specified commission, who, in effecting the transaction, also receives a commission from the other party, without disclosing that fact to his principal, is not entitled to recover a commission from his principal, especially where there is evidence that reliance was placed upon his judgment and skill. *McLure* v. *Luke*, 84 C. C. A. 1, 154 F. 647, 650, 24 L. R. A. (N. S.) 659, and note; 9 C. J. 568. This rule, however, is applied only in cases where the agent is clothed with some discretion in the matter of advising or negotiat-

ing the sale or purchase of property, where the duty which he owes to one principal is inconsistent with that which he owes to the other. The law upon this point is stated in the case just cited in the following language:

"The principle for which the defendant contends is that it is prima facie contrary to public policy for a broker to act as agent for both vendor and vendee in a sale of property, and that, when such double employment is shown, the agent is not entitled to recover compensation from either of his principals, without proof that both of them knew of the dual capacity in which he acted, and consented thereto. This may be regarded as the statement of an elementary rule of law, and is supported by numerous authorities, among which the following may be cited: *Meyer* v. *Hanchett*, 43 Wis. 246; *Scribner* v. *Collar*, 40 Mich. 375, 29 Am. Rep. 541; *Leathers* v. *Canfield*, 117 Mich. 277, 45 L. R. A. 33, 75 N. W. 612; *Hobart* v. *Sherburne*, 66 Minn. 171, 68 N. W. 841; *Young* v. *Trainor*, 158 Ill. 428, 42 N. E. 139; *Hannan* v. *Prentis*, 124 Mich. 417, 83 N. W. 102; 19 Cyc. [Law & Proc.] p. 279. It will be found upon examination that this principle of law is only applied in cases where the agent is clothed with some discretion in the matter of advising or negotiating the sale or purchase of property, where the duty which he owes to one principal is inconsistent with that which he owes to the other. The rule is based upon the doctrine that 'the duty of an agent for a vendor is to sell the property at the highest price; and of the agent of the purchaser, to buy it for the lowest.' *Farnsworth* v. *Hemmer*, 1 Allen (Mass.) 494, 79 Am. Dec. 756. When the fact of such inconsistent relation is either admitted or proved, the burden is then upon the agent to show that both principals had knowledge and consented to his acting in such dual capacity, and without such proof he is not entitled to recover compensation from either; but where the agency is not of this nature, where the agent is given no discretionary power to negotiate the sale, and his employment is merely to bring the principals together that they make their own contract upon such terms as they may agree, the reason for the rule above stated ceases, and the agent is entitled to recover from both principals, if both have agreed to pay him for such services. *Rupp* v. *Sampson*, 16 Gray (Mass.) 401, 77 Am. Dec. 416; *Knauss* v. *Gottfried Krueger Brewing Co.*, 142 N. Y. 70, 36 N. E. 867; *Empire State Ins. Co.* v. *American Cent. Ins. Co.*, 138 N. Y. 446, 34 N. E. [200] 201."

There is nothing in the contract of agency between Davis and Huffaker or in their conduct with respect to the transaction from which it can be inferred that Huffaker placed any reliance upon Davis to negotiate a sale or trade of the listed

property or gave him any discretionary power whatever. By the contract Davis was authorized to sell the listed property for $15,000 in cash, upon the terms therein stated, but he was not authorized to make any trade. The evidence with respect to Davis' relationship with Waite shows that Waite had promised to pay Davis a commission if a sale of the Cozy Dale Farm were effected through Davis' office; but this promise was not made in writing and hence was void under our statutes, and when the parties were ready to sign the exchange agreement which Davis had written for them to sign, then Waite refused to go through with the transaction in Davis' office because he did not wish to pay Davis the commission. So it does not appear that Waite was placing any reliance upon the skill and judgment of Davis in making a sale or that he had authorized Davis to make any sale or trade of the farm property. All that Davis did and all that he was authorized to do by either party, besides advertising the Huffaker property for sale and showing the several properties to prospective customers, was to bring the parties together and they made their own trade. So that the rule against dual representation cannot be held to preclude the plaintiff's right to recover in this case upon the record as it was made at the trial.

The respondent says that the rule does not apply because Davis' contract with Waite was not in writing, hence it is void under the statutes of the state relating to such contracts (Comp. Laws 1917, § 5817), and Davis did not collect and could not collect a commission from Waite. We do not approve this argument. If in fact Davis represented both parties to the transaction, when by reason of his relationship to either he was not entitled to do so, then he cannot recover a commission from either because he was guilty of fraud as to both. The vice of the situation, where an agent represents both parties without their knowledge and consent, is that he is representing interests which are adverse to each other and his duties are conflicting, and it is no less vicious because his contract with one side or the other happens to be void because not in writing.

Having now reviewed the proceedings of the trial court with respect to every thing about which appellant complains, so far as we have been permitted to do so by the record, having examined and decided adversely to appellant every proposition which he has advanced why the judgment ought to be reversed, it seems to this writer that the logical conclusion to be arrived at is that the judgment must be affirmed. But such is not the opinion of a majority of the members of this court. A majority of the court are of opinion that the judgment ought to be reversed because of what they regard as a fundamental error in the record. It is in relation to the basis upon which the commission must be computed, if the plaintiff is entitled to anything. In the contract, the essential features of which have already been set out above, Huffaker says to Davis: "If through your efforts, in whole or in part, I sell or trade the following described property or any part thereof, at the price and terms hereafter mentioned or otherwise, I agree to pay you a commission of 5 per cent of the first $—— and 5 per cent on the balance of the sale price thereof." Then it recites that Davis is authorized "to sell said property for $15,000, payable $1,000 in cash and the balance of $14,000 payable $50.00 per month with interest on the unpaid portion of the purchase price at 7 per cent per annum." The plaintiff sued on this contract, making a copy thereof a part of his complaint by reference, and in his complaint alleges:

"That on the_____day of May, 1927, the said Ross C. Davis, through his own efforts, secured a customer able, ready and willing to trade certain real estate to the said defendant for the real estate described in said contract; that thereafter and in the month of May, 1927, the said defendant traded his said real estate, at an appraised valuation of $15,000.00, to the said customer furnished to him as aforesaid by the said Ross C. Davis, and received in exchange from said customer a tract of real estate satisfactory to said defendant, and upon terms acceptable to him.

"That by reason of the foregoing facts, on May 27, 1927, there became due and was due from the defendant to the said Ross C. Davis, as commission under the terms of said contract Exhibit A, the sum of $750.00, no part of which has been paid. * * *"

The findings of fact in this particular follow the allegations of the complaint, with the additional feature that the name of the customer, Waite, and the name of the farm received by defendant, Cozy Dale Farm, are supplied.

It will be observed that there is no allegation in the complaint, there was no finding by the trial court, and there was no evidence produced at the trial, as to the value of the property which Huffaker received in exchange for the property which was listed by him with Davis for sale. Yet such value is the basis upon which the agent's commission under the contract is to be computed. 9 C. J. 582. The promise of the principal is to pay a commission of 5 per cent. of the "sale price," in case of a sale or trade effected through the agent's efforts. The sale price of property which is traded for other property cannot be anything else than the value of the thing received. Therefore the plaintiff should have alleged and proved, and the trial court should have found, the value of the property which Huffaker received in exchange for the city property which he had listed for sale with his agent. Without that fact being established there is nothing in the record upon which the 5 per cent. commission can be computed. It cannot be computed upon the "appraised valuation of $15,-000.00," whatever that expression may mean as used in the complaint and findings of fact, and we confess that we do not know what it does mean, because the seller did not promise to pay a commission upon an appraised valuation but upon the sale price, and it cannot be computed upon the price at which the agent is authorized to sell, to wit, $15,000, unless he actually sells at that price, for the sale price and the price at which he is authorized to sell are manifestly two different things and were not intended by the parties to mean the same thing. It is therefore doubtful that plaintiff has stated a cause of action in his complaint; and at any rate his complaint is quite ambiguous and uncertain as to the fact upon which the commission is to be measured. The findings of fact being deficient in the same respect, they do not support the conclusion of law that appellant is indebted to respondent in the sum of $750, plus

interest, and so it follows from what has been said that the conclusions of law and the judgment rendered herein are contrary to law and against the evidence, as alleged in appellant's assignment of error No. 9. Not, however, for any of the reasons advanced and argued by appellant, but because of the reasons mentioned herein.

A majority of the members of the court are of the opinion that the judgment ought to be reversed because of the errors which have just been pointed out, and such will be the order of the court.

But with that result I do not concur. I think the errors on account of which the judgment is reversed are harmless and have not been prejudicial to any of the substantial rights of appellant, and therefore the judgment ought to be affirmed. The complaint is defective, as has been pointed out, but appellant has never objected to it on that account upon any of the numerous occasions when he has been in this court or the lower court. There was no evidence at the second trial concerning the value of the Cozy Dale Farm, or that portion of it which represents the property traded for the city property, but the appellant did not ask for a nonsuit or for judgment in his favor or otherwise raise any objection on that account. The findings are deficient, but he has never mentioned it. While it was the plaintiff's burden to make his case complete in all respects as regards allegations, proof, and findings, it was likewise the defendant's duty to inform the court if he had any objection or felt himself aggrieved or at a disadvantage on account of any such matters. By not making objection, he waived them. The conclusions and judgment are erroneous for the reasons herein mentioned, but the appellant has never said so. If he had been harmed in any manner by such errors, I think it only fair to assume that he would have pointed it out to this court.

The judgment is reversed, and the cause remanded to the lower court with directions to grant a new trial. Appellant to recover costs on appeal.

CHERRY, C. J., concurs.

STRAUP, J.

I concur in the result reversing the judgment and remanding the case for a new trial. I do not concur in what is said and decided in the prevailing opinion respecting the question of the claimed dual capacity of Davis, the assignor of the plaintiff, in acting for and claiming commissions from both the defendant Huffaker and Waite, the principals in the exchange of the properties. The contract entered into respecting the relation of principal and agent between Huffaker and Davis is set forth in the prevailing opinion. Concerning it, it is said that not anything is contained in the contract and that there is not anything in the conduct of the parties, from which it may be inferred that Huffaker placed any reliance upon Davis to negotiate a sale or trade. I do not concur in that. Of course, there is no express language of such reliance, but it necessarily is implied from the contract creating the agency and employing and authorizing Davis to sell or trade or effect a sale or trade of the property, in the performance of which he was required to act for the best interest of Huffaker and to effect the best sale or trade for him that could be had, and not to divide his allegiance and fidelity between both the seller and the purchaser. In pursuance of the contract, Davis assumed to do and did more than merely bringing Huffaker and Waite together. That is evident from the testimony of Davis himself of his continued efforts to bring the parties not only together but to an agreement, his examining and inspecting the properties to be exchanged first with one of the contracting parties and then with the other, participating in the discussions and negotiations between the parties concerning the trade, preparing a contract for the exchange or trade of the properties which was signed by himself and by Waite and by him presented to Huffaker for his signature. Davis being employed by both seller and purchaser, he owed a duty to the former to sell the property or obtain a purchaser at the highest and best price, while to the latter to buy it at the lowest, which rendered his duties in the premises inconsistent. That also is true in

effecting and bringing about an exchange of the properties and in participating in negotiations concerning an agreement with respect thereto. The case thus on its facts is as I think not within the case of McLure v. Luke, cited in the prevailing opinion.

With respect to what is said in the prevailing opinion expressing views of the majority members of the court as to the basis on which a commission, if any is to be computed, I concur, and add these observations: As is seen by the contract between Huffaker and Davis, the former agreed to pay the latter "5 per cent of the sale price" of the real estate and not "of the appraised valuation" of $15,000 as alleged in the complaint. The contract having been attached to and made a part of the complaint, the allegations of the latter may not enlarge the plain terms of the former but must yield thereto. The plaintiff, however, grounded his cause as though he was entitled to 5 per cent. of $15,000, the alleged appraised value, and in his brief urges he is entitled to $750, 5 per cent. of $15,000, or nothing. He tried his case and induced findings and a judgment for $750 and interest on such theory. The action being grounded on the contract as it was required to be, the theory thus on which the amount of commissions was alleged and claimed, upon which the finding as to the amount of the commission was based and on which the judgment rests, was without and not within the plain terms of the contract. Complaint is made of such finding and of the judgment. Because the complaint filed in the action was not assailed by demurrer does not preclude the defendant from complaining of the finding and of the judgment in such particular. He still had the right to urge that whatever compensation be awarded against him for commissions that it be based on the terms and conditions of the contract and not otherwise. The trial court basing its finding and judgment, not on 5 per cent. of the sale price, or on the value of the property Huffaker received in exchange for his property, but on the alleged appraised value of $15,000 regardless of the value of the property received by Huffaker,

manifestly was prejudicial to the rights of Huffaker and gave the plaintiff an advantage to which he clearly was not entitled. Though a sufficient assignment was made to justify a review of the finding and judgment in such respect, and though in presenting and discussing the rulings involved, the appellant's counsel may not have given the best or good reasons for the erroneous rulings and in doing so may even have urged untenable claims, yet enough was discussed and said concerning the assignment to show that it was not waived or abandoned. Courts may and frequently do consider a ruling properly assigned as error and sustain the assignment, if on the record it ought to be sustained, though the argument in support thereof may be faulty or even spurious, especially if the defect or error involved and inherent in the assignment is glaring and harmful against him complaining of the ruling, as here it was, and where the ruling is, as here it was, discussed and defended by the party in whose favor it was made though the discussion with respect thereto may be brief.

ELIAS HANSEN and FOLLAND, JJ.

We concur in the opinion of Judge WOOLLEY as modified by the views expressed by Mr. Justice STRAUP.

EPHRAIM HANSON, J., being disqualified, did not participate herein.